Plaintiff's Name __KORY T. O'BRIEN__

Inmate No. __AM 1378__

Address __Salinas Valley State Prison__

__P.O. Box 1050__

__Soledad CA Ø 93960__

FILED

SEP 22 2022

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

__KORY T. O'BRIEN__
(Name of Plaintiff)

__1:22-cv-00780-BAM__
(Case Number)

vs.

__D.REED, et al.,__

__J.RECIO,__

__T.LY,__

__TALLEY,__

__CDCR Valley State Prieson.__

(Names of all Defendants)

**AMENDED CIVIL RIGHTS COMPLAINT UNDER:**

[X] 42 U.S.C. 1983 (State Prisoner)

[ ] **Bivens** Action [403 U.S. 388 (1971)] (Federal Prisoner)

RECEIVED

SEP 22 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY CLERK

**I. Previous Lawsuits** (list all other previous or pending lawsuits on additional page):

A. Have you brought any other lawsuits while a prisoner?  Yes _X_  No____

B. If your answer to A is yes, how many? __12__

Describe previous or pending lawsuits in the space below. (If more than one, attach additional page to continue outlining all lawsuits in same format.)

1. Parties to this previous lawsuit:

Plaintiff __KORY T. O'BRIEN__

Defendants __SIED,et al.,__

2. Court (if Federal Court, give name of District; if State Court, give name of County)
__U.S.D.C. EASTERN DISTRICT CALIFORNIA__

3. Docket Number__1:16-cv-1426__   4. Assigned Judge _____

5. Disposition  (Was the case dismissed? Appealed?  Is it still pending?)

__Case dismissed__

(1)

6. Filing Date (approx.) <u>August 2016</u>     7. Disposition Date (approx.) <u>January 2017</u>

## II. Exhaustion of Administrative Remedies

**NOTICE:**     Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prior to filing suit, inmates are <u>required</u> to exhaust the available administrative remedy process, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1999 (9th Cir. 2002), and neither futility nor the unavailability of money damages will excuse the failure to exhaust, *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002).  If the court determines that an inmate failed to exhaust prior to filing suit, the unexhausted claims will be dismissed, without prejudice. *Jones*, 549 U.S. at 223-24, 127 S.Ct. at 925-26.

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes <u>X</u>     No_____

B. Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes <u>X</u>     No_____

C. Is the process completed?

Yes <u>X</u>          If your answer is yes, briefly explain what happened at each level.

Log #136122 Disapproved at first level, Accepted at third level, appealed third level decision Filed California Depatrment of General Service

No_____          If your answer is no, explain why not.

## III. Defendants

List each defendant's full name, official position, and place of employment and address in the spaces below.  If you need additional space please provide the same information for any additional defendants on separate sheet of paper.

A. Name <u>D.REED</u>          is ~~employed as~~ *employed at* <u>Valley State Prison</u>

~~Current Address/Place of~~ Employment *as* <u>Srgt./Chowchilla, CA</u>

1 2. Previuos lawsuit

2   Plaintiff: KORY T. O'BRIEN

3   Defendants: SIED

4   Court: U.S.D.C EASTERN DISTRICT CALIFORNIA

5   Docket Number: 1:16-cv-1178

6   Disposition: Case Dismissed

7 3.Previous lawsuit

8   Plaintiff: KORY T. O'BRIEN

9   Defendants: GULARTE,et al.,

10  Court: U.S.D.C. SOUTHERN DISTRICT CALIFORNIA

11  Docket Number: 3:18-cv-980

12  Disposition: Case dismissed on summary judgment

13 4.Prevous lawsuit

14  Plaintiff: KORY T. O'BRIEN

15  Defendants: SAID,et al.,

16  Court:U.S.D.C. EASTERN DISTRICT CALIFORNIA

17  Docket Number: 1:18-cv-741-JLT-SAB

18  Dispostion: Case on Appeal, 9th Cir.

19 5.Previous lawsuit

20  Plaintiff: KORY T. O'BRIEN

21  Defendants: GARCIA, et al.,

22  Court: U.S.D.C. SOUTHERN DISTRICT CALIFORNIA

23  Docket Number: 3:19-cv-1113

24  Disposition: Case closed, settlement for plaintiff

25 6.Previous lawsuit

26  Plaintiff: KORY T. O'BRIEN

27  Defendants:MURPHY, et al.,

28  Court:U.S.D.C. SOUTHERN DISTRICT CALIFORNIA

(3)

1   Docket Number: 3:19-cv-1496

2   Dispositon: Case closed, settlement for plaintiff

3. 7. Previous lawsuit

4   Plaintiff: KORY T. O'BRIEN

5   Defendants: MARIENTES, et al.,

6   Court: U.S.D.C. SOUTHERN DISTRICT CALIFORNIA

7   Docket Number: 3:20-cv-023

8   Dispostion: Case closed, settlement for plaintiff

9. 8. Previous lawsuit

10   Plaintiff: KORY T. O'BRIEN

11   Defendants: OGLETREE, et al.,

12   Court: U.S.D.C. EASTERN DISTRICT CALIFORNIA

13   Docket Number: 1:20-cv-00856-BAM

14   Disposition: Case closed, settlement for plaintiff

15. 9. Previous lawsuit

16   Plaintiff: KORY T. O'BRIEN

17   Defendants: SAHA, et al.,

18   Court: U.S.D.C. SOUTHERN DISTRICT CALIFORNIA

19   Docket Number: 3:19-cv-1957

20   Disposition: Case on Appeal, 9th Cir.

21. 10. Previous lawsuit

22   Plaintiff: KORY T. O'BRIEN

23   Defendants: DIAZ, et al.,

24   Court: U.S.D.C. EASTERN DISTRICT CALIFORNIA

25   Docket Number: 1:21-cv-00856-SAB

26   Disposition: still open

27. 11. Previous lawsuit

28   Plaintiff: KORY T.O'BRIEN

(4)

1   Defendants: C. GIBSON, et al.,

2   Court: U.S.D.C. EASTERN DISTRICT CALIFORNIA

3   Docket Number: 1:21-cv-01574

4   Disposition: still open

5 12. Previous lawsuit

6   Plaintiff: KORY T. O'BRIEN

7   Defendants: N. GORDIAN,

8   Court: U.S.D.C. EASTERN DISTRICT CALIFORNIA

9   Docket Number: 1:22-cv-00456-SAB

10   Disposition: still open

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B. Name J.RECIO _____ is employed as CO/Retired _____

Current Address/Place of Employment Valley State Prison _____

C. Name T.LY _____ is employed as CO _____

Current Address/Place of Employment Valley State Prison/ Chowchilla, Ca _____

D. Name TALLEY _____ is employed as CO _____

Current Address/Place of Employment Valley State Prison/ Chowchilla,Ca _____

E. Name CDCR _____ is employed as Supervisor _____

Current Address/Place of Employment state of California _____

**IV. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary. Must be in same format outlined below.)

<u>Claim 1</u>:  The following civil right has been violated (e.g. right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.):

please see attached documents herewithin.

_____

_____

<u>Supporting Facts</u> (Include all facts you consider important to Claim 1. State what happened clearly and in your own words.  You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Claim 1.):

_____

_____

_____

_____

_____

_____

_____

_____

(6)

1   On July 2, 2021, the plaintiff, Kory O'Brien, was awaken

2   from an afternoon nap. Awaken by the sounds of keys to his cell

3   dorm door and a yell of his last name,"O'Brien". In compli-

4   ance withhis name being called, O'Brien got up and limped to

5   the cell dorm door,eyes and head still foggy.Defendant Recio

6   instructed O'Brien to turn around and cuff-up. O'Brien was not

7   disruptive or hostile towards Reio's order and complies. Recio

8   applied the hand cuffs to O'Brien's wrists behind O'Brien's

9   back.Recio jerks O'Brien backwards and instructs O'Brien to

10  turn to his left.O'Brien tell Recio,"Ineed my cane." Recio

11  ignores O'Brien's request and asks O'Brien, "where is your ID?"

12  O'Brien tell Recio, "I am not sure, I just woke up." Recio

13  cuffed O'Brien before even verifing that it was O'Brien.Because,

14  Recio knows who O'Brien is from past encounters.

15    Recio and O'Brien have had disagreements in the past.O'Brien

16  and Recio were on C-yard at Valley State Prison at the same

17  time in the past. O'Brien has a medical condition that limits

18  the direct exposure that O'Brien is to have to sun UV. While

19  Recio was a yard C/O on C-yard, O'Brien was waiting in the shade

20  next to a building. Even after O'Brien explained why O'Brien

21  was waiting in the shade, Recio wrote O'Brien a Rules Violation

22  Report,(RVR). O'Brien then wrote both an ADA Reasonable Accom-

23  odation Request to stand in the shade due to medical reasons,

24  and a grievance, CDCR 602, against Reico for staff misconduct.

25  Staff misconduct, cause after O'Brien explained his medical

26  condition to Recio, Recio was unprofessional in preventing

27  disorder and distruption within the prison. The Reasonable

28  Accomodation Response noted that staff understood they should

1  provide reasonable accomodations without relying on a chrono.

2  The grievance decision noted that Valley State Prison Staff on

3  C-yard and J.Recio were aware O'Brien was to stand in the shade

4  to accomodate his medical condition. Shortly after O'Brien re-

5  ceived these responses, O'Brien and Recio were transfered to D-

6  yard and Valley State Prison ,due to COVID. O'Brien and Recio

7  continued to have verbal confortations about O'Brien standing in

8  the shade while O'Brien was on D-yard. Recio would sarcastically

9  in tone tell O'Brien , "you know how to file a 602 on me."

10     On July 2, 2021, after O'Brien told Recio,"I don't know,

11  I just woke up,"Recio pushed O'Brien in the back and said,"Walk!"

12  O'Brien repeated to Recio,"I need my cane." Recio ignored O'Brien

13  "Walk!" O'Brien slowly limped forward.

14  O'Brien uses a cane to assist him to prevent unwanton pain in his

15  right foot and leg. This unwanton pain is caused by a bulged disc

16  in O'Brien's lower back. The bulged disc is pressing on the right

17  nerve in O'Brien's back also causing "drop foot." Because O'Brien

18  uses a cane, O'Brien also has a mobility impaired vest that he

19  wears. O'Brien has had both the cane and vest prior to being

20  housed at Valley State Prison. O'Brien uses  the cane and wears

21  the vest when he leaves the cell dorm to goto chow twice a day.

22  Staff at Valley State Prison including named Defendants have seen

23  O'Brien use his vest. Recio has even asked O'Brien to put on his

24  vest if not wearing it and holding it.O'Brien also has medical

25  restrictions to be housed in a lower bunk, lower teir and a cell

26  dorm with handrails in the shower and bathroom area at the time.

27     As O'Brien complied with Recio's order to "walk," Defendant

28  Reed stops the escort and asks Recio,"wher is his ID?" O'Brien

(8)

1  replied to Reed,"I don't know,I Just woke up." Reed instructs

2  Recio," put him over there,"indicating next to the entrance/exit

3  door of  building 1.

4      Recio pushes O'Brien in the lower back,"walk!" O'Brien limps

5  toward the wall. When O'Brien reaches the wall,Recio feels the

6  need to push O'Brien against the bars, they run horizantal in

7  front of the windows. O'Brien stands facing the bars continuosly

8  lifting his right foot, in obvious pain. O'Brien tells Recio,"I

9  need my cane and can you loosen these cuffs?" Recio looks at

10  O'Brien with a smile and says nothing.

11      While O'Brien is standing against the wall, other C/O's

12  enter O'Brien's assigned cell/dorm under the pretense of looking

13  for O'Brien's ID. On the outside of the cell dorm door is an

14  assignment card for each inmates bed assignment. Officers would

15  have observed O'Brien's cane and mobility vest while looking for

16  O'Brien's ID. O'Brien's cane was hanging on the outside end of

17  O'Brien's bunk, O'Brien's vest was inside O'Brien's locker. The

18  officers removed O'Brien's property and vest out of O'Brien's

19  locker,while looking for his ID.

20      After the officers vacated O'Brien's living area, Reed inform-

21  ed Recio, "escort him to my office". Reed then left the building,

22  got on a golf cart and drove off. Recio waited for Defendant's

23  T.Ly and Talley. Reed's office is located in D-program office.

24  The office is over a thousand feet away from building 1 where

25  O'Brien was to be escorted from.

26      As O'Brien was being escorted out of housing building 1,

27  O'Brien said very loudly,"I am ADA, Ineed my cane, and loosen the

28  the cuffs." On O'Brien's left  shoulder was T.LY. On O'Brien's

(9)

1 right shoulded was Talley. Directly behind O'Brien was Recio.

2 Recio just instructed O'Brien, "walk", as he pushed his knuckles

3 into O'Brien's lowere back. As O'Brien limped forward, O'Brien

4 repeatid, " I am ADA, I need my cane, and loosen the cuffs."

5 Talley instructed O'Brien, "just shut up." O'Brien continued

6 to engage verbally with the escorting Defendants as he slowly

7 limped forward in unwanton and unnecessary pain.

8    Talley and O'Brien had a previous discussion,just a week

9 before, on June 25,2021. This discussion involved the Request for

10 Interview, CDCR 22, that O'Brien had sent to C/O Buitron. The

11 CDCR 22 was in regard to freestaff T.Kafka's conduct. During

12 the discussion between Talley and O'Brien, O'Brien used his cane

13 and wore his mobility vest. The discussion was conducted outside

14 the trailer that the cognitive behavior group is held. This

15 discussion lasted approximately thirty min., requiring O'Brien

16 to use his cane while he stood.Talley was also the officer

assigned to the cognitive behavior group. While O'Brien would wait

18 to enter the group, Talley would walk by all the inmates to open

19 the trailers prior to entry. Talley would acknowledge O'Brien as

20 as O'Brien stood outside with his cane and wearing his mobility

21 impaired vest.

22    As O'Brien limped in unnecessary pain towards the D program

23 office, the escorting defendants were unwilling to loosen

24 O'Brien's cuffs or stop and retreve O'Brien's cane.O'Brien

25 noticed that his peers in the cognitive behavior group were not

26 being let in to the trailers for group. But,were rather~~at there~~

27 gathered in the grass infront of building 4. These were the only

28 inmates on the yard.O'Brien was going to be forced to walk infront

1. of the inmates. This is refered to as the "walk of shame."

2. The reason that it is refered to as the "walk of shame", is

3. because no security alarms were sounded. If no security

4. alarms are sounded and an inmate is handcuffed being escorted

5. to the program office he is trying to get off the yard

6. Inmates believe that another inmate is trying to get off the

7. yard because they are afraid to be on the yard. Basically,

8. the inmate does not have the intenstinal fortitude to fight.

9. An inmaye is looked at being weak in the macho world of prison.

10. As O'Brien was being paraded infront of his peers, O'Brien

11. could hear the whispers of the peers. Such whispers as,

12. "what a bitch, don't be scared, anouther roll-up case...".

13. O'Brien said out loud,"I am ADA, and they won't let me have

14. my cane," O'Brien said this twice. Reed was parked in his

15. golf cart not more than five feet from O'Brien infront of

16. building 4. Reed looked at O'Brien, got wide eyed and dropped

17. his lower jaw. Reed then drove off to park infront of the

18. D-yard program office. Recio pushed his knuckles into O'Brien's

19. lower back and instructed him,"walk," T.Ly and Talley were

20. both still on O'Brien's sides walking with the escort.

21. Reed knew that O'Brien had medical reasonable accomoda-

22. tions. Reed would observe O'Brien in the morning going to

23. breakfast with his cane and mobility impaired vest. Reed

24. interviewed O'Brien numerous times for Reasonable medical

25. Accomodations. Reed is the Srgt. that moved O'Brien into

26. the cell dorm cause O'Brien needed handrails in the shower

27. abd bathroom area.Reed also has a computer within his office

28. that informs his of all inmates medical needs.Reed admitted

1 to O'Brien that he heard O'Brien say,"[he] was ADA and needed

2 his cane." Reed asked O'Brien"what was  I suppose to do,

3 stop the escort and get your cane." O'Brien told Reed,"yes."

4     Once O'Brien got to the D-yard program office the "walk

5 of shame", did not stop. Defendants T.Ly and Talley did not

6 continue with the escort. Recio was the C/O conducting the

7 parade. Recio had O'Brien walk through the hallways of the

8 program office to the C-yard side of the program office.

9 This was unnecessary. Unnecessary because, when an individual

10 enters the program office on the D-yard side, there is two

11 inmate holding cells as you enter on the left-hand side and

12 Srgt. Reed's office is immediately inside D-yard program

13 office on the right-hand side. No inmates were in either the

14 holding cells on the left or in Reed's office on the right.

15 After O'Brien was paraded through the hallways of the program

16 office, O'Brien was placed in a holding cell within the

17 program office on the C-yard side, by Recio.

18 O'Brien

19     After O'Brien was in the holding cell, Recio removed

20 the cuffs from O'Brien. O'Brien told Recio, "I need my cane."

21 Recio told O'Brien," you know what to do, if you don't like

22 it, 602 it." Refering to the grievance process, CDCR 602.

23 O'Brien tells Recio," really?" Recio smiles and tells O'Brien

24 "ya,you know how to do it, you have 602ed me before." Recio

25 smiles at O'Brien and leaves the room.

26     Shortly after Recio leaves the room, a C/O enters the room

27 with O'Brien's cane. The C/O places O'Brien's cane on a

28 table within the room. The C/O leaves the room. O'Brien looks

(12)

1 at his wrists. They are red, swollen, and have visible lacer-

2 ations.

3      Within a short time, both Recio and Reed enter the room

4 that O'Brien is being held in. Reed instructs Recio,"take him

5 to my office." Recio tells O'Brien,"turn around and cuff-up."

6 O'Brien looks at Recio," how am I going to walk with my cane,

7 if my hands are behind my back, stupid?" Reed rolls his eyes

8 shakes his head and instructs Recio," cuff him in the front."

9 Reed leaves the room. Recio applies  the cuffs to O'Brien's

10 wrists. When Recio applies the cuffs, Recio twists the cuffs

11 to shorten the distance on the chain between the cuffs.

12 O'Brien looks at Recio," Really and agiain why are they so

13 tight?" Recio smiles,"you can still use your cane, 602 it."

14 Recio opened the holding cage door and paraded O'Brien through

15 the hallways of the program office, back to the D-Yard side

16 of the program office to Reed's office.

17      Reed instructed O'Brien, "take a seat." Recio shuts the

18 door to Reed's office and waits outside the door. Reed begins

19 the conversation, "I understand you have a problem with a

20 counselor ?" O'Brien asks Reed, "what are you talking about ?"

21 Reed answers, "you have a problem with T.Kafka, the counselor

22 in your substance abuse group ?" O'Brien tells Reed, "I did

23 not even goto her group today. I got a ducit last night for a

24 differnet group. That is what you did all this for and denied

25 me the use of my cane. You could have just called me down here

26 to your office to ask me what was going on." Reed tells

27 O'Brien, " are you talking about her ?" O'Brien replies,

28 " all I have done is filed paperwork on her, 22's and 602's."

(13)

1 Reed responds with," okay well then you are talking about

2 her." O'Brien tells Reed, " I have that right." Reed tells

3 O"Brien, " do you want to have a date." Refering to a realse

4 date from prison. O'Brien told Reed, " I have a date you

5 know that it is in that computer infront of you." Reed asks

6 O'Brien, "you want me to transfere you?" O'Brien tells Reed,

7 " I thought that was what this was about." Reed asked O'Brien,

8 " why is that ?" O"Brien answered with, " cause I am suing

9 Ogletree  and Lt. Costa." Reed replied with, "...what for ?"

10 O'Brien tells Reed," for retaliation." Reed tells O'Brien

11 "well if you don't stop 'talking' about T.Kafta, I am going to

12 put you in Ad-Seg for over familiarity and get you transfered

13 out of here." O'Brien smiles at Reed, "you know you are mak-

14 that up, cause all I did was write her up. And how could

15 I be over familiar, if all I am doing is writing her up?

16 Otherwise, I would already be in Ad-Seg pending an investiga-

17 tion br Squad." Reed tells O'Brien, " well just quit!" O'Brien

18 answered with, " whatever." Reed  then instructs O'Brien,

19 "stand up, turn around and open the door." Reed then tells

20 Recio," un-cuff him and let him go back to the yard." O'Brien

21 is allowed to leave the program office with his cane and to

22 return to his cell dorm.

23      Upon O'Brien's return to his cell dorm, O'Brien had to

24 apologize and explain to his cell mates on why the C/O's

25 came into their living area. O'Brien's cell mates then hazed

26 O'Brien about having to move cause they did not want to have

27 the C/O's coming into their living areas and distrupting them.

28 O'Brien was further questioned and hazed by other inmates about

1 why the C/O's had handcuffed him and escorted him to the

2 program office.Other inmates even told O'Brien, " see what

3 happens when you 602 and f__k with the counselours." Besides

4 the "walk of shame," O'Brien had to endure weeks of question-

5 ing not only by inmates but also C/O's.  O'Brien felt humili-

6 ated by  this walk of shame and the constant questioning from

7 inmates that O'Brien did not even associated with. Shortly

8 after the unnecessary parading for an interview, O'Brien

9 had to get a walker in addition to his cane. The pain from

10 being escorted a substantial distance without the use of

11 O"Brien's cane cause more pain then usuall to O'Brien's right

12 foot and leg.

13                          CLAIMS

14    A.Retaliation to First Amendment, Right of Speech

15     "Prisoners have a First Amendment right to file grievances

16 against prison officials and to be free from retaliation for

17 doing so." (citing Brodheim v. Cry,584 F.39 1262,1269(9th Cir

18 2009). O'Brien had filed a grievance against Recio for staff

19 miscoduct. While both O'Brien and Recio were on C-Yard of

20 Valley State Prison.Recio was aware of the grievance O'Brien

21 filed against him. The awareness was provide by the response

22 from the grievance that Recio was informed to allow O'Brien

23 to stand in the shade. Also, Recio refered to O'Brien knowing

24 how to 602 him cause O'Brien had 602'd Recio in the past.

25 Recio was informed that O'Brien's handcuffs were to tight by

26 by O'Brien, more than once. According to Recio's answer to

27 O'Brien, regarding the tightness of the cuffs, and the need

28 of O'Brien's cane, that O'Brien knows has to 602 Recio cause

(15)

1. O'Brien had done it in the past was an adverse action. A reason-
2. able jury could infere that Recio's conduct was the adverse
3. action because O'Brien had filed grievances against Recio in
4. the past.Recio even acknowledges his knowledge of O'Brien
5. filing grievances against him, Recio. Because inmates would
6. not want to be put through the pain  of overly tigh hand cuffs
7. most inmates would have a chilling effect presented upon them
8. to not file a grievance against an officer for not allowing
9. the inmate to stand in the shade.The overly tightness of hand
10. cuffs and restricting the use of a mobility device does not
11. provide any penological corrective goal. The goal was that of
12. punishment for filing a grievance against Recio. Recio applied
13. the hand cuffs and refused to loosen them. Recio's body language
14. of smiling when O'Brien requested the loosening of hand cuffs
15. and the denial of O'Briens cane along with the acknowledgement
16. that Recio was aware of O'Brien filing grievance against
17. Recio is evidence of a retalitory motive.
18.      Defendant Reed's conduct was retaliation for O'Brien
19. filing grievance against freestaff  T.Kafka. Reed made it very
20. clear to O'Brien that Reed considered O'Brien's filing of
21. grievances and CDCR 22's, Request for Interview, as a form of
22. "talking about" frestaff Kafka. Reed even threatened O'Brien
23. to conjure false charges of over familiarity with Kafka to
24. place O'Brien in Ad-Seg and transfer O'Brien. "[T]he mere
25. threat of harm can be an advrse action...." Brodheim,584 F.3d
26. at 1270.Reed even informed O'Brien to just quit.Inmates do not
27. want to have the C/O's pack their property to goto Ad-Seg.
28. When C/O's pack an inmates property inmates loose property.

1 Then inmates do not want to move and possibly loose the cell

2 mates they get along with. Individuals in the  society do not

3 like to move. That threat of moving alone would chill a person

4 of ordinary firmness from continuing to file grievances against

5 freestaff T. Kafka, not including the threat of transfere.

6 There is no advance to penological corrective goal to threaten

7 to take and adverse action against O'Brien if he did not just

8 quit "talking about", or infered writtinge paperwork on Kafka.

9 Other C/O's even told O'Brien,"you know why that was done?

10 Out of retaliation for filing paperwork."

11     Remedies:

12  The relief that Plaintiff seeks is monetary compensation

13 along with punitive damages against both Defendants, D.Reed

14 and J.Recio in their individual capacity.

15     B. Excessive Force, Cruel and Unusuall Punishment

16         Violating Eigth-Amendment Eighth Amendment.

17     The Eighth Amendment protects prioners from inhumane methods

18 of punishment and from inhumane conditions of confinement.

19 Morgan v. Morgenson, 465 F.3d 1041,1045 (9th Cir. 2006) The

20 unnecessary and wanton infliction of pain violates the Cruel

21 and Unusual Punishment Clause of the Eight Amendment. Hudson v.

22 McMillian, 503 U.S. 1,5(1992)

23     I)Excessive Force by the Application of Handcuffs

24     "[W]henever prison officials stand accused of using

25 excessive physical force in violation of the [Eighth Amendment],

26 the core judicial inquiry is...whether force was applied in

27 a goodfaith effort to maintain or restore discipline, or

28 maliciously and sadistically to cause harm." Id. at 6-7

(17)

1   The fact finder should consider if the elements for

2 excessive force have been meet under the Hudson factors; (1)

3 the extent of the injury suffereed;(2) the need to use force;

4 (3) the relationship between the need to use force and the

5 amount of force used;(4) any threat reasonably perceived by the

6 defendants; and(5) any efforts made to temper the severity of a

7 forceful response,such as, if feasable, providing a prior warn-

8 ing or givinig an order to comply." See Furnace v. Sullivan,

9 705 F.3d 1021,1028 (9th Cir. 2013).

10   The force applied to O'Brien was not needed to maintain or

11 or restore discipline. O'Brien suffered from handcuffs that

12 overly tight.Defendant Recio applied the handcuffs bath at

13 O'Brien's cell and when O'Brien was in a holding cell within

14 C-yard program office.O'Brien informed Recio at least three(3)

15 times that his handcuffs needed to be loosened before and

16 during the escort.Recio's sadistic intent was  the response to

17 O'Brien's request by jsut a smile and statement to 602 him.

18   Recio's application of overly tight handcuffs was done

19 with a malicious intent to cause the unnecessary or wanton

20 infliction of pain to O'Brien. O'Brien suffered lacerations and

21 swelling to both of his wrists. A "significant injury" is not

22 necessary for an Eighth Amendment claim based on the malicious

23 and sadistic use of force. See Hudson at 7-9.

24   There was no need to use any force against O'Brien. O'Brien

25 has always complied with an order to report to the program

26 office. O'Brien only hadgone-- had gone to breakfast before

27 the incident.O'Brien had not attended Kafka's group. O'Brien

28 was asleep in his cell. The officers could have just paged

1 O'Brien to the D program office for a simple investigation.

2 There was need for a cuffing three officer escort. If an escort

3 was warranted, a single officer could have escorted O'Brien,

4 uncuffed, to a destination. Just as has been done to O'Brien

5 at the same institution.Three officers and a sergant do not

6 cuff and escort and inmate to investigate a Rules Violation

7 Report (RVR), Reasonable Accomodation Request, a grievance, a

8 committe hearing,or a Request for Interview. For the program

9 sergant to do any of those investigations the inmate is just

10 paged to goto the program office. After the inteview, by Def-

11 endant Reed, O'Brien was not cuffeed and escorted. No, instead

12 O'Brien walked out of the program office,with his cane, to

13 return to his housing unit on D-yard.O'Brien complied with all

14 orders given to him. This use of force was merely retaliation

15 with a malacious intent, under the ruse of just an investigation.

16       There was no threat to the defendants. O'Brien has never

17 attatcked any prison staff or threatened to attack any prison

18 prison staff.O'Brien was not being disruptive or inciting

19 violence.There is no threat that justifies overly tight use

20 of handcuffs that can not be loosened.

21       Not a single effort to temper the severity of force used

22 against O'Brien. As a matter of fact, O'Brien complied with

23 verbal comands and was not issued an RVR.A simple order to

24 report to the program office is all that was needed.The same

25 action that is used in non-retalitory investigations.According

26 to Valley State Prison Operational Manual 51020.5 " verbal

27 persation is an expectation of staff...." According to J.

28 Grunfeld's declaration on July 13,2020, "Policy further states

1 that staff should attempt to verbally persuade, whenever

2 possible, to mitigate the need for force." There was no verbal

3 persuation or any kind of mitigation for the use of force.

4      Recio applied the handcuffs. Recio ignored O'Brien's

5 request to loosen the handcuffs atleast three times. Defendant's

6 T. Ly and Talley heard O'Brien's request to have his handcuffs

7 loosened and all they did was for Talley to tell O'Brien to,

8 "shut-up". T.Ly and Talley can not idelly sit by while a fellow

9 officer violates a contitutional right.

10      Defendants Recio, T.Ly, and Talley are all liable in

11 their individual capacity. Plaintiff seeks both compensentory

12 and punitive damages against defendants.

13      II) Denial of Cane, Violates the Eighth Amendment

14      Under the Eighth Amendment, prison officials must meed the

15 the medical needs of prisoners with disabilities and furnish

16 the assistance they need. Prisoners are entitled to mobility

17 aids, and to be protected from conditions that are unsafe.See

18 Rosales v. Coughlin, 10 F.Supp. 2d 261,269(W.D.N.Y. 1998),

19 "Depervation of a medically prescribed cane stated a constitutional

20 claim." or See Ruiz v. Estelle,503 F.Supp. at 1340 ( denial of

21 canes stated a ~~constitu~~ constitutional claim). Courts have held

22 that the failure to accommodate disabilities raises Eighth

23 Amendment issues.

24      On July 2, 2022, O'Brien told Recio,while standing against

25 the wall to exit building 1, that he needed his cane. Recio

26 Deprived O'Brien his medically prescribed cane.Then, during

27 the escort from building one to the program office O'Brien

28 requested his cane four more times. These four requests were

1  heard by Recio, Talley, T. Ly, and two of the four requests were

2  were heard by Red Reed and inmates. O"Brien was limping for

3  approximately thousand feet, creating the obviuosness of

4  unnecessary or wanton pain. Talley and T.Ly sea serched O'Brien's

5  cell under the suppervison of Reed. O'Brien's cane and mobility

6  impaired vest were located unconceled locations. O'Brien's

7  mobility impaired vest was removed from his locker n by one

8  of the officers searching O'Brien's locker."State officials

9  cannot shut their eyese to inmate suffering" Estelle v. Gamble,

10  429 U.S. 97,103-04, 97 S.Ct. 285, 50L.Ed.2d 251 (1976). Peace

11  officers have an affirmative duty to intervene adn and to prt-

12  protect those in custody from constitutional abuse by their

13  fellow officers. Officers may be held liable for failing to

14  intercede if they had an opportunity to do so. See Cunningham v.

15  Gates, 229 F.#D F.3d 1271, 1289(9th Cir. @2000). All Defendants

16  violated the Eighth Amendment by not alowing allowing or

17  providing O'Brien his cane when O'Brien requested it. All

18  Defendants failed to intervene with each other officers conduct.

19     All named Defendants are liable in their individual

20  capacity. Plaintiff seeks both compensatory and punitive damages

21  against all named Defendants.

22     C. Violation of Americans with Disabilities Act and

23      Rehabilitation Act ("ADA"a and "RA")

24     To prove a violation of Title II of the ADA, 42 U.S.C. §12132,

25  a pal- plaintiff must show; (1) that he or she is a "Qualified

26  individual with a disability";(2)that he or she was either

27  excluded from participation in or denied the benefits of a

28  public entity's service, programs, or activities, or was other-

1 wise discriminated against by the public entity; and (2) (3) that

2 such exclusion, denial of benefits, or discrimination was by

3 reason of the disability. See Duvall v. Cty. of Kitsap, 260 F.3d

4 1124, 1135 (9th Cir. 2001). The Ninth Circuit has held that the

5 second element of this test can be satisfied where a law enforce-

6 ment officer could have used less force or no force during the

7 performance of his law-enforcement duties with respect to a

8 disabled person. See Sheehan v. City & Cty. of San Francisco,

9 743 F.3d 1211, 1232-33 (9th Cir. 2014) (holding that a failure

10 to reasonably accomodate a person's disability in the course

11 of an investigation...using unnecessary force, causing the person

12 to suffer 'greater injury or indignity in that process' "gives

13 rise to a claim under §12132" When applied in the prison

14 context, it follows that the the second element of a §12132

15 claim can be satisfied where a correctional officer could have

16 used less force or no force during the performance of his or her

17 penological duties with respect to a disabled person.

18 T   The denial to provide O'Brien with his cane supports an ADA

19 claim because it "affected his access" to activities. The failure

20 to provide safe transportation to the "government programs" of

21 an investigation. See McCray v. V City of Dothan, 169 F. Supp.

22 2d 1260, 1275 (M.D.Ala. 2001).

23     The defendants Failed to provide reasonable accomodations

24 after beibn  being given notice of a need for reasonable

25 accommodation. Therefore, all defendants were acting in there

26 official capacity. The defendant is the public entity of

27 Valley State Prison . Valley State Prison had the  lack of

28 policy or proper trainig for reasonable accommodations for the

1 transportation of disabled inmates.

2    Defendant is liable for compensatory damages in their

3 ind- official capacity.

4    D. Supplemental Jurisdiction of State Claims.

5    I) Violation of State Constitution, Article 1 §17, Cruel

6       or Unusual Punishment.

7    Defendants Reed, Recio, Talley. and T. Ly  inflicted cruel

8 or unusual  punishement when they did not allow O'Brien the

9 the use of a cane to walk without the unnecessary pain. The

10 CaliforniA eona  constitution mirrors that of the U.S. consti-

11 tution with the exception of the word. THe U.S. constitution

12 Eight Amendment requires cruel and unusual punishment. Where the

13 California constittution only requires  cruel or unusual punish-

14 ment. Therefore, the plaintiff asks the court to retain supple-

15 mental jurisduiction over state claims pursuint to 28 U.S.C.

16 $ §1367.

17    II) Assualt and Battery

18    The state constitution prohibits prison personal from using

19 physical force"absent imment imminent and present danger of harm

20 to others, themselves, or state property. That of a penological

21 purpose. Defendants Recio,Talley, and T.Ly inactions to loosen

22 overly tight handcuffs were done intentionally with the intent

23 to cause harm to O'Brien.This inaction by the defendants was

24 unreasonable and unnessary.

25    III) Violation of SB 2, Tom Bane Civil Rights Act

26    Defendant Reeds  Reed's investigation and conversation with

27 O'Brien was designed as a use of threat and intimidation to

28 stop and/or persuade O'Brien from future use of the grievance

(23)

1. process. The grievance process is botha  a Federal and State

2. right ~~garruateed~~- guaranteed to O'Brien.

3.     As to all state claims the Plaintiff requests that the

4. Court carries supplemental Jurisdiction, and allows for a jury

5. trial.

6. ~~666=-~~                    Additional Remedies

7.     Plaintiff demands a jury trial. Where a jury will decide

8. all compensatory and punitive damages awrded to the Plaintiff.

9. ~~99~~

10.     I declare pursuant to 28 U.S.C. §1746, under penalty of

11. perjury that the above information is true and correct.

12.

13. Dated: 9/19/2022                    Respectfully Submitted,

14.

15.                                     Kory T. O'Brien
                                        Kory T. O'Brien

16.                                     Appearing Pro Se

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

KORY T. O'Brien,

    Plaintiff,

v.            Case Number.  1:22-cv-00780-BAM

D. REED, ET AL.,

    Defendants.    PROOF OF SERVICE

    I hereby certify on *Sept. 19, 2022*_____, I served a copy of the attached AMENDED CIVIL RIGHTS COMPLAINT by placing a copy in a postage paid envelope ~~addredd~~ addreessed to the person hereinafter listed, by depositing said envelope in the United States Mail at: Salinas Valley State Prison, P.O. ~~Box~~ Box 1050,Soledad CA 93960

(Name and ~~Addd-~~ Address of Court Served:)

Clerk of the Court
Room 1501
United States District Court
2500 Tulare Street
Fresno, CA   93721

I declare under penalty of perjury that the foregoing is true correct.

*Kory T. OBrien*