1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN, | Case No. 1:22-cv-780-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| D. REED, *et al.*, | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | |
| | (ECF No. 15) |
| | **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Kory T. O'Brien ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend. Plaintiff's first amended complaint, filed September 22, 2022, is currently before the Court for screening. (ECF No. 15.)

### I. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.      Plaintiff's Allegations

Plaintiff is currently housed at California Medical Facility in Vacaville, California. The events in the complaint are alleged to have occurred at Valley State Prison, in Chowchilla, California.  Plaintiff names the following defendants: (1) D. Reed, Sergeant, (2) J. Recio, retired correctional officer, (3) T. Ly, correctional officer, (4) Talley, correctional officer, (5) California Valley State Prison.

Plaintiff alleges as follows.  On July 2, 2021, Plaintiff was awakened from an afternoon nap when he heard keys in his cell door and his name being called. Plaintiff rolled out of his lower bunk bed and his head and eyes were still foggy.  Defendant Recio told Plaintiff to turn around and cuff up. Plaintiff was not disruptive or hostile towards Recio's order and complied. Recio applied the hand cuffs and jerked Plaintiff backwards and instructed Plaintiff to turn to his left. Plaintiff said he needs his cane.

Recio asked where is Plaintiff's I.D.  Plaintiff said he did not know because he just woke up. Recio did not verify that Plaintiff was who he was before being cuffed.  Plaintiff and Recio

had had past encounters. They were on a prison yard at the same time in the past. Recio wrote a rules violation report for Plaintiff standing in the shade, when Recio knows that Plaintiff has a medical condition that limits the direct exposure that Plaintiff has to the sun. Plaintiff filed a 602 against Recio. After that, Recio and Plaintiff were transferred to another yard together and continued to have verbal confrontations.

On July 2, 2021, Recio told Plaintiff to "walk" and ignored Plaintiff's request for his cane. Plaintiff's leg was limping forward. Plaintiff has a bulging disc in his lower back and caused "drop foot." Plaintiff uses the cane to ease walking, and has a mobility impaired vest as well. Plaintiff uses the cane and wears the vest when he leaves the cell to go to chow twice a day. Recio has in the past asked Plaintiff to put on his vest when Plaintiff is not wearing it.

Plaintiff complied with Recio's order to "walk," and Defendant Reed stopped the escort and asked Plaintiff where's your I.D. Plaintiff said he did not know because he just woke up. Defendant Reed instructed Recio to put Plaintiff over next to the entrance/exit door of building 1. Recio pushed Plaintiff's lower back and says "walk." Plaintiff limped towards the wall. Recio pushes Plaintiff against the bars that run horizontal in front of the windows. Plaintiff stands in front of the bars lifting his right foot, in obvious pain. Plaintiff tells Recio that Plaintiff needs his cane and can Recio loosen the cuff. Recio smiles and says nothing.

While Plaintiff is standing against the wall, other correctional officers enter Plaintiff cell purportedly to look for Plaintiff's I.D. Plaintiff's cane and mobility vest were in plain sight.

Reed then told Recio to escort Plaintiff to Reed's office. Reed got in a golf cart and drove off to his office which is about 1,000 feet away. As Plaintiff was being escorted, Plaintiff said loudly, "I am ADA, I need my cane and loosen the cuffs." Plaintiff was being escorted, on the left by T. Ly, and on the right by Talley. Recio was walking behind them. Recio pushed Plaintiff forward with his knuckles in Plaintiff's back. Plaintiff repeated that he is ADA, needs his cane and loosen the cuffs. Talley told Plaintiff to shut up, and Plaintiff limped forward in pain.

The week prior, Plaintiff and Talley had a discussion about one of the freestaff. During that discussion, Plaintiff used his cane and wore a mobility vest for the thirty minute conversation. Talley had seen Plaintiff numerous times with Plaintiff's mobility vest on and

3

using a cane.

As Plaintiff limped towards the program office, the escorting Defendants would not loosen Plaintiff's cuffs or get Plaintiff's cane.  Plaintiff noticed that his peers in the cognitive behavior group were not being let in the trailers and were gathered by building 1.  Plaintiff was forced to walk in front of the inmates in the "walk of shame."  Where an inmate is walked in cuffs, and no alarm is sounded, it is looked on as trying to get off the yard in fear, not having fortitude and being weak.  He heard the whispers of other peers saying Plaintiff is a rollup case.  Plaintiff said he is ADA and they won't let him have his cane. Recio pushed his knuckles into Plaintiff's lower back and told him to "walk," and Ly and Talley were both on either sides of Plaintiff.

Plaintiff alleges that Defendant Reed knew Plaintiff needed reasonable accommodation because Reed had seen and talked to Plaintiff while Plaintiff had his mobility vest on and using his cane.  Reed asked Plaintiff, "what was I suppose to do, stop the escort and get your cane."  Plaintiff told Reed, "yes."

Once Plaintiff got to the D yard program office, the walk of shame did not stop.  Recio alone walked Plaintiff through the program office and into the C yard holding cell.  This was unnecessary to parade Plaintiff through the program office, and the closest holding cells to Reed's officer were vacant.  Recio removed the cuffs, and Plaintiff said Plaintiff needs his cane.  Recio said "you know what to do if you don't like it, 602 me," and said you have before.  Shortly after, a correctional officer enters the room with the cane which he places on the table in the room.  Plaintiff looked at his wrists, and they are red, swollen and have visible lacerations.

Both Recio and Reed enter the room Plaintiff is being held in, and Reed instructed Recio "take him to my office." Recio says to cuff up.  Plaintiff tells Reed, "how am I going to walk with my cane if my hands are behind my back, stupid."  Reed instructs Recio to cuff Plaintiff in the front.  Reed leaves and when Recio applies the cuffs, Recio twists the cuffs to shorten the distance on the chain.  Plaintiff says, "really and again why are they so tight.'  Recio smiles and says Plaintiff can use his cane and "602 it."  Recio took Plaintiff and paraded Plaintiff through the hallways of the program office, back to the D-yard side and to Reed's office.

4

In Reed's office, Plaintiff is told to take a seat. Reed asks Plaintiff that, "I understand you have a problem with a counselor?" Plaintiff asks what Reed is talking about. Reed says that Plaintiff has a problem with T. Kafka, the counselor in Plaintiff' substance abuse group. Plaintiff said he had not seen her. Plaintiff said he did not need to be brought to the office, Reed could have just called Plaintiff down and asked Plaintiff. Reed tells Plaintiff that he has to stop talking about her. Plaintiff says he filed paperwork on her, 22's and 602's. Reed told Plaintiff to stop talking about her, and Plaintiff says he has that right. Reed said, "do you have a date," referring to a release date from prison. Plaintiff told Reed that Plaintiff already has a date. Reed asks whether Plaintiff wants Reed to transfer Plaintiff. Plaintiff said, he knew that this is what it is about because Plaintiff is suing Correctional Officer Ogletree and Lt. Casta. Reed asks for what is Plaintiff suing Ogletree and Casta, and Plaintiff responds with "for retaliation." Reed tells Plaintiff "well if you don't stop 'talking' about T. Kafta, I am going to put you in Ad-Seg for over familiarity and get you transferred out of here." Plaintiff says all he did was write her up and was not overly familiar. Reed tells Plaintiff "well just quit." Reed then tells Plaintiff to stand and open the door. Reed instructs Recio to uncuff Plaintiff and let Plaintiff go back to the yard.

When Plaintiff returned to his cell dorm, Plaintiff had to apologize to his cell mates and explain why the correctional officers came to their living area. The cell mates hazed Plaintiff about having to move because they did not want correctional officers coming to their living quarters. They hazed him about 602ing officers and counselors. Plaintiff had to endure weeks of questioning from inmates and cell mates. Plaintiff felt humiliated by the walk of shame and the constant questioning. Shortly after, Plaintiff had to get a walker because the pain from being escorted a substantial distance without the use of the cane caused more pain than usual in his right foot and leg.

Plaintiff claims retaliation in violation of the First Amendment. Reed retaliated for Plaintiff filing a grievance against T. Kafka because the 602 and form 22's was a form of "talking about" Kafka. Reed threatened Plaintiff with false charges of over familiarity with Kafka, or place Plaintiff in Ad-seg. This threat of harm is an adverse action. The threat of movement would chill continuing to file grievances because a move disrupts Plaintiff's life. There was no

penological interest to tell Plaintiff to stop "talking about her" when that really meant writing paperwork on Kafka.

Plaintiff also claims excessive force in violation of the Eighth Amendment.  The force was excessive in the application of the handcuffs.  The cuffs were overly tight and Plaintiff told Recio at least three times that the handcuffs needed to be loosened before and during the escort.  Recio just smiled.  Plaintiff suffered lacerations and swelling to both wrists.  Plaintiff was in compliance with the orders at the time and has never harmed or threatened to harm an officer.  Plaintiff was in his cell at the time and there was no need for cuffing and a three officer escort.  Typically, when the sergeant wants to talk to an inmate, the inmate is paged to go to the program office.  After the interview with Reed, Plaintiff was not cuffed or escorted.  Plaintiff alleges a violation of Valley State Prison Operational Manual for failure of staff to use verbal persuasion in lieu of force.  Recio ignored Plaintiff's requests to loosen the handcuffs at least three times.  Defendant Ly and Talley heard Plaintiff ask for the cuffs to be loosened during the escort and failed to take any action to reduce the force being used on Plaintiff.

Plaintiff alleges that the denial of his cane violated the Eighth Amendment. Plaintiff told Recio on July 2, 2022 while standing against the wall near the exit to building 1 that Plaintiff needed his cane.  Recio denied Plaintiff the cane.  During the escort, Plaintiff asked for his cane four more times.  He said he needed his cane to Recio, Talley, Ly and two of the four requests were heard by Reed and inmates.  Plaintiff was limping for about a thousand feet and it was obvious he was in pain. Talley and Ly had searched Plaintiff's cell and his mobility impaired vest was removed by one of the searching officers.  The officers are liable for not providing Plaintiff with his cane when he requested it.

Plaintiff alleges a violation of the Americans with Disability Act.  The officers could have used less force or no force during the performance of their penological duties with respect to Plaintiff, a disabled person.  The denial of Plaintiff's cane is an ADA violation because it affected his access to activities.  They failed to provide reasonable accommodation after being notified of the need for accommodation.  All defendants were acting in their official capacity and Valley State Prison lacked a policy or properly training for reasonable accommodations for

transportation of disabled inmates.

Plaintiff asks that the court take supplemental jurisdiction of his state law claims. Plaintiff alleges a violation of California Constitution, Art. 1 §17 for cruel and unusual punishment. Reed, Recio, Talley and Ly inflicted cruel and unusual punishment when they would not allow Plaintiff to use his cane to walk which inflicted pain. Plaintiff also alleges Assault and Battery from the use of force by Recio, Talley and Ly by not loosening the overly tight handcuffs. Plaintiff alleges the tight handcuffs were done intentionally with intent to harm. Plaintiff also alleges violation of the Tom Bane Civil Rights Act. Defendant Reed's investigation and conversation with Plaintiff was designed to use threat and intimidation to stop or persuade Plaintiff from future grievances.

Plaintiff seeks compensatory and punitive damages.

### III.   Discussion

### A.  Eighth Amendment

#### 1.   Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. *De minimis* uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

For claims of excessive physical force, the issue is "whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
*Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury ... [,]
the need for application of force, the relationship between that need and the amount of force used,
the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the
severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).
Finally, because the use of force relates to the prison's legitimate penological interest in
maintaining security and order, the court must be deferential to the conduct of prison officials.
See Whitley, 475 U.S. at 321–22.

Liberally construing the allegations, Plaintiff states a cognizable claim against Recio,
Talley and Ly for tight handcuffs during the escort during which Plaintiff said at least four times
that the cuffs were tight.  *See Guerrero v. Rivera*, No. EDCV 13-0092-JGB (JPR), 2013 WL
878285, at *2 (C.D. Cal. Mar. 8, 2013) (finding that plaintiff had failed to state a cognizable
excessive force claim regarding overly tight handcuffs were the named defendants had nothing to
do with the handcuffing, that Plaintiff did not allege that he made more than one request to any
defendant to loosen the cuffs, or that any defendant was present for more than a few moments and
was able to observe the effect the handcuffs had on the plaintiff); *Gregory v. Adams*, No. CIV S-
05-1393 FCD EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue
existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive
force in ignoring plaintiff's repeated assertions of pain and refusing to loosen cuffs for more than
five hours). See *Salazar v. L.A. Cnty. Sheriff's Dep't*, No. CV 17-07686-ODW (DFM), 2021 WL
3438653, at *2 (C.D. Cal. July 6, 2021) (rejecting without leave to amend excessive-force claim
because plaintiff didn't allege facts showing how handcuffs caused him pain or injury or how he
communicated that to defendants), accepted by 2021 WL 4338946 (C.D. Cal. Sept. 23, 2021);
*Johnson v. Frauenheim*, No. 1:18-cv-01477-AWI-BAM (PC), 2021 WL 5236498, at *8 (E.D.
Cal. Nov. 10, 2021) (rejecting without leave to amend excessive-force claim because plaintiff
didn't allege that he asked defendant "more than once to loosen" handcuffs or that defendant
"otherwise knew that the handcuffs were too tight and were causing [p]laintiff to suffer severe
pain"), accepted by 2021 WL 5982293 (E.D. Cal. Dec. 17, 2021); *Bibbs v. Meiser*, No. SACV 22

0202 SPG JPR, 2022 WL 2528611, at *3 (C.D. Cal. July 6, 2022) (a constitutional violation could only rest on repeated ignored requests.)

      In addition, Plaintiff alleges that Defendant Recio put his knuckles in Plaintiff's back and pushed him against horizontal bars.  Generally, such an allegation is *de minimis* use of force. Plaintiff further alleges that his back had a bulging disc.  However, Plaintiff fails to allege Recio had any knowledge of the disc or that Plaintiff complained of pain.  Plaintiff has not sufficiently pled facts showing that Defendant Recio applied force to Plaintiff maliciously and sadistically to cause harm.  Plaintiff has been unable to cure this deficiency. Therefore, Plaintiff has not alleged a cognizable claim for excessive force.

### 2.      Conditions of Confinement

      Plaintiff alleges he was humiliated by "parading" Plaintiff in handcuffs and limping in front of other inmates.

      Allegations of harassment and intent to humiliate a prisoner do not usually state a cognizable claim in conditions of confinement cases. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *McMillian*, 503 U.S. at 9, 112 S.Ct. 995 (citations and internal quotation marks omitted). Thus, "courts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997), cert. denied 522 U.S. 852, 118 S.Ct. 143, 139 L.Ed.2d 90 (citing, inter alia, *McMillian*, 503 U.S. at 8, 112 S.Ct. 995).

      Plaintiff's allegations simply do not rise to the level of extremely egregious conduct intended to cause severe psychological pain required to state an Eighth Amendment claim. See, e.g., *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) (finding defendant's conduct "not objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim). Plaintiff alleges that the "walk of shame" put him at risk with other inmates because it exposes him as weak, in fear, and being "roll up on the yard." Plaintiff has not

9

sufficiently pled that he has been incarcerated under conditions posing a substantial risk of serious harm because his allegations are merely speculative fears of harm. *See Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm"); *Tirado v. Santiago*, No. 1:22-CV-724-BAM (PC), 2022 WL 3230573, at *1 (E.D. Cal. Aug. 10, 2022) (failure to state a claim as speculative fear of harm where an officer made the following comment to plaintiff, "I'm not the one who locked it up because of safety concerns.")

### 3. Medical Need

The two-part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A serious medical need is shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Plaintiff had a serious medical need because he needed a cane to walk.

In addition, the defendant's response to that serious medical need must be deliberately indifferent. "Under th[e deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Toguchi*, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See *Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* If a prison official should have been aware of the risk, but was not, then the official

10

has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Liberally construing the allegations, Plaintiff states a cognizable claim against Recio, Ty and Talley for denial of Plaintiff's cane during the escort. Plaintiff fails to state a cognizable claim against Defendant Reed because Plaintiff fails to allege facts that Defendant Reed knew on the date of the escort that Plaintiff had a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate.

### B.   First Amendment - Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id.* at 1271.  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff fails to set forth any factual allegations to support a claim of retaliation.  Plaintiff complains of a conversation with Defendant Reed where Reed told Plaintiff to stop talking about a female counselor because it was over familiarity, and Plaintiff told Defendant Reed that Plaintiff had filed 22's and 602's against the female counselor.  There are no allegations that Reed knew that Plaintiff had 602ed anyone before being brought down to meet with Reed or that the conversation was about any 602s.  In fact, when Plaintiff mentioned 602s in the middle of the conversation, Reed said to stop talking about the female counselor-"just stop." It is constitutionally permissible for correctional officers to discuss potential violations of institution

11

rules (i.e., over familiarity) and possible repercussions from violating rules.  The conversation reasonably advanced a legitimate correctional goal.

### C.  Eleventh Amendment Immunity

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override ...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal*., 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court ...." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs*., 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity). Therefore, Plaintiff cannot pursue claims for damages against Valley State Prison in this action.

### D.  Americans with Disabilities Act and Rehabilitation Act ("ADA" and "RA")

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

To the extent Plaintiff intends to sue the individual named defendants for violation of his

rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The proper defendant in ADA actions is the public entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

In order to state a claim under the ADA, the plaintiff must have been "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023. Plaintiff has alleged no facts demonstrating such exclusion or denial. Plaintiff alleges that being denied his cane excluded his ability to have access to activities and failed to reasonably accommodate Plaintiff. While Plaintiff alleges that he uses a cane and mobility vest, he does not allege that denial of his cane led to an exclusion or denial of a prison service, program, or activity. Plaintiff was being escorted to the program office and not being denied access to activities.

### E. Verbal Harassment

Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which prohibits cruel and unusual punishment. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see *also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). Even in cases concerning "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' " *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (quoting *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)) (alterations omitted), abrogated on other grounds by *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). However, verbal harassment may violate the constitution when it is "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff]

psychological damage." *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019) (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092). In affirming in an unpublished opinion, the Ninth Circuit quoted Freeman: "As for being subjected to abusive language directed at [one's] religious and ethnic background, verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Zavala v. Bartnik*, 348 F. App'x 211, 213 (9th Cir. 2009) (quoting *Freeman*, 125 F.3d at 738). Plaintiff cannot state a claim for any harassment he alleges.

### F.     Prison regulations

To the extent that Plaintiff attempts to bring any claims solely based on a defendants' violation of prison rules and policies, he may not do so, as alleged violations of prison rules and policies do not give rise to a cause of action under § 1983. Section 1983 provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Specifically, Plaintiff cannot state a claim for the type of escort, a three person escort, because Plaintiff does not have a constitutional right to any particular kind of escort. Thus, the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under section 1983.

### G.  State Law Claims

The Court notes that Plaintiff has not alleged compliance with the Government Claim Act. "California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the California Victim Compensation and Government Claims Board ... no more than six months after the cause of action accrues." *Lopez v.*

*Cate*, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2). "Timely claim presentation is not merely a procedural requirement, but is ... a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action." *Id.* (internal quotation marks and citations omitted). The "obligation to comply with the Government Claims Act" is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). *McPherson v. Alamo*, No. 3:15-cv-03145-EMC, 2016 WL 7157634, at *6 (N.D. Cal. 2016) (citing *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (2013)). Plaintiff appears to raise claims under California state law. However, Plaintiff does not allege that he presented a claim to the California Government Claims Program (the successor to the Victim Compensation and Government Claims Board) within six months of the incidents underlying this action.

## IV.     Conclusion and Recommendation

Based on the above, the Court finds that Plaintiff's first amended complaint states a cognizable claim against Recio, Talley and Ly for tight handcuffs during the escort on July 2, 2021 in violation of the Eighth Amendment and against Recio, Talley and Ty for denial of Plaintiff's cane during the escort in violation of the Eighth Amendment.  However, Plaintiff's complaint fails to state any other cognizable claims for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Clerk of the Court is HEREBY DIRECTED to randomly assign a District Judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's first amended complaint, filed September 22, 2022 (ECF No. 15), against J. Recio (retired correctional officer), Talley (correctional officer) and T. Ly (correctional officer) for tight handcuffs during the escort on July 2, 2021 in violation of the Eighth Amendment and against Recio, Talley and Ty for denial of Plaintiff's cane during the escort in violation of the Eighth Amendment; and

///

2.   All other claims and defendants be dismissed based on Plaintiff's failure to state

claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge

assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being

served with these Findings and Recommendations, Plaintiff may file written objections with the

Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  Plaintiff is advised that the failure to file objections within the specified

time may result in the waiver of the "right to challenge the magistrate's factual findings" on

appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923

F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **October 12, 2022**                    /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE

16