# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN, | Case No. 1:22-cv-00780-AWI-BAM (PC) |
| Plaintiff, | ORDER VACATING FINDINGS AND RECOMMENDATIONS (ECF No. 17) |
| v. | |
| REED, *et al.*, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON COGNIZABLE CLAIMS (ECF No. 15) |
| Defendants. | |
| | **THIRTY (30) DAY DEADLINE** |

## I.   Procedural Background

Plaintiff Kory T. O'Brien ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On October 12, 2022, the assigned Magistrate Judge screened Plaintiff's first amended complaint and issued findings and recommendations that this action proceed against Defendants J. Recio (retired correctional officer), Talley (correctional officer), and T. Ly (correctional officer) for tight handcuffs during the escort on July 2, 2021 in violation of the Eighth Amendment and against Recio, Talley, and Ly for denial of Plaintiff's cane during the escort in violation of the Eighth Amendment.  (ECF No. 17.)  The Magistrate Judge further recommended that all other claims and defendants be dismissed based on Plaintiff's failure to state claims upon

1  which relief may be granted.  (*Id.*)  The findings and recommendations were served on Plaintiff

2  and contained notice that any objections were to be filed within fourteen days after service.  (*Id.*

3  at 16.)  On October 18, 2022, Plaintiff timely filed objections to the findings and

4  recommendations.  (ECF No. 18.)

5  **II.   Plaintiff's Objections**

6  Plaintiff raises several issues in his objections: (1) Plaintiff requests clarification as to

7  whether his first amended complaint stated a cognizable excessive force claim; (2) Plaintiff

8  argues that he states a cognizable claim for denial of his cane against Defendant Reed in addition

9  to Defendants Recio, Ly, and Talley; (3) Plaintiff argues that he states a cognizable claim for

10  retaliation against Defendant Reed; and (4) Plaintiff argues that he has sufficiently alleged

11  compliance with the claim presentation requirement and the Court should exercise supplemental

12  jurisdiction over his state law claims.  (ECF No. 18.)  Upon review of Plaintiff's objections, the

13  Court finds it appropriate to vacate the findings and recommendations issued on October 12, 2022

14  and to issue the following revised screening order.

15  Plaintiff's first amended complaint, filed September 22, 2022, is therefore currently before

16  the Court for screening.  (ECF No. 15.)

17  **III.   Screening Requirement and Standard**

18  The Court is required to screen complaints brought by prisoners seeking relief against a

19  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

20  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

21  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

22  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

23  A complaint must contain "a short and plain statement of the claim showing that the

24  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

25  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

26  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

27  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

28  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

2

1   572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

2          To survive screening, Plaintiff's claims must be facially plausible, which requires

3   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

4   for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

5   *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully

6   is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

7   standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

8   **IV.      Plaintiff's Allegations**

9          Plaintiff is currently housed at California Medical Facility in Vacaville, California. The

10  events in the complaint are alleged to have occurred at Valley State Prison, in Chowchilla,

11  California. Plaintiff names the following defendants: (1) D. Reed, Sergeant; (2) J. Recio, retired

12  correctional officer; (3) T. Ly, correctional officer; (4) Talley, correctional officer; and

13  (5) CDCR/Valley State Prison.

14         Plaintiff alleges as follows. On July 2, 2021, Plaintiff was awakened from an afternoon

15  nap when he heard keys in his cell door and his name being called. Plaintiff got up and limped to

16  the cell door, with his head and eyes still foggy. Defendant Recio instructed Plaintiff to turn

17  around and cuff up. Plaintiff was not disruptive or hostile towards Recio's order and complied.

18  Recio applied the hand cuffs to Plaintiff's wrists behind Plaintiff's back. Recio jerked Plaintiff

19  backwards and instructed Plaintiff to turn to his left. Plaintiff said "I need my cane."

20         Recio ignored Plaintiff's request and asked "where is your ID?" Plaintiff said "I am not

21  sure, I just woke up." Recio did not verify that Plaintiff was who he was before being cuffed.

22  Plaintiff and Recio had had past encounters and disagreements. They were on a prison yard at the

23  same time in the past. Recio wrote a rules violation report for Plaintiff standing in the shade,

24  when Recio knows that Plaintiff has a medical condition that limits the direct exposure that

25  Plaintiff has to the sun. Plaintiff filed a 602 against Recio. After that, Recio and Plaintiff were

26  transferred to another yard together and continued to have verbal confrontations.

27         On July 2, 2021, Recio told Plaintiff to "walk" and ignored Plaintiff's second request for

28  his cane. Plaintiff slowly limped forward. Plaintiff has a bulging disc in his lower back that

3

1    presses on the right nerve in his back causing pain in his right foot and leg and "drop foot."

2    Plaintiff uses the cane to ease walking, and has a mobility impaired vest as well.  Plaintiff uses

3    the cane and wears the vest when he leaves the cell to go to chow twice a day.  Staff at the

4    institution, including Defendants, have seen Plaintiff use his vest.  Recio has in the past asked

5    Plaintiff to put on his vest when Plaintiff is not wearing it.  Plaintiff also had medical restrictions

6    requiring him to be housed in a lower bunk, lower tier, and a cell dorm with handrails in the

7    shower and bathroom area at the time.

8           Plaintiff complied with Recio's order to "walk," and Defendant Reed stopped the escort

9    and asked Recio "where is his ID?"  Plaintiff replied to reed, "I don't know, I just woke up."

10   Reed instructed Recio to put Plaintiff over next to the entrance/exit door of building 1.  Recio

11   pushed Plaintiff's lower back and said "walk!"  Plaintiff limped towards the wall.  When Plaintiff

12   reached the wall, Recio pushed Plaintiff against the bars that run horizontal in front of the

13   windows.  Plaintiff stood in front of the bars, continuously lifting his right foot, in obvious pain.

14   Plaintiff told Recio "I need my cane and can you loosen these cuffs?"  Recio looked at Plaintiff

15   with a smile and said nothing.

16          While Plaintiff was standing against the wall, other correctional officers entered Plaintiff's

17   cell, purportedly to look for Plaintiff's ID.  Plaintiff's cane and mobility vest were in plain sight.

18          Reed then told Recio to escort Plaintiff to Reed's office, located in the D program office,

19   more than 1,000 feet away from building 1 where Plaintiff was to be escorted from.  Reed got in a

20   golf cart and drove off.

21          As Plaintiff was being escorted out of building 1, Plaintiff said loudly, "I am ADA, I need

22   my cane, and loosen the cuffs."  Plaintiff was being escorted, on the left by Defendant T. Ly, and

23   on the right by Defendant Talley.  Recio was walking behind them.  Recio instructed Plaintiff to

24   "walk" and pushed Plaintiff forward with his knuckles in Plaintiff's back.  Plaintiff repeated "I

25   am ADA, I need my cane, and loosen the cuffs."  Talley told Plaintiff "just shut up," and Plaintiff

26   slowly limped forward in pain.

27          The week prior, Plaintiff and Talley had a discussion about a Request for Interview,

28   CDCR 22, that Plaintiff had sent to Correctional Offier Buitron in regard to freestaff T. Kafka's

                                                        4

conduct.  During that discussion, Plaintiff used his cane and wore a mobility vest for the thirty-minute conversation.  Talley had seen Plaintiff numerous times with Plaintiff's mobility vest on and using a cane.

As Plaintiff limped towards the D program office, the escorting Defendants would not loosen Plaintiff's cuffs or retrieve Plaintiff's cane.  Plaintiff noticed that his peers in the cognitive behavior group were not being let in the trailers and were gathered in front of building 4.  These were the only inmates on the yard.  Plaintiff was forced to walk in front of the inmates in the "walk of shame."  A "walk of shame" is where an inmate is walked in cuffs, and no alarm is sounded,  and it is looked on as trying to get off the yard in fear, not having fortitude and being weak.  Plaintiff heard the whispers of other peers saying Plaintiff is a rollup case.  Plaintiff twice said out loud, "I am ADA, and they won't let me have my cane."  Reed was parked in his golf cart not more than five feet from Plaintiff in front of building 4.  Reed looked at Plaintiff, got wide-eyed and dropped his lower jaw.  Reed then drove off to park in front of the D-yard program office.  Recio pushed his knuckles into Plaintiff's lower back and told him to "walk," and Ly and Talley were both on either sides of Plaintiff.

Plaintiff alleges that Defendant Reed knew Plaintiff needed reasonable accommodation because Reed had seen and talked to Plaintiff while Plaintiff had his mobility vest on and using his cane.  Reed had observed Plaintiff going to breakfast with his cane and mobility impaired vest, interviewed Plaintiff numerous times for reasonable medical accommodations, and Reed was the Sergeant that moved Plaintiff into the cell dorm because Plaintiff needed handrails in the shower and bathroom area.  Reed admitted to Plaintiff that he heard Plaintiff say he was ADA and needed his cane, and Reed asked Plaintiff, "what was I suppose to do, stop the escort and get your cane."  Plaintiff told Reed, "yes."

Once Plaintiff got to the D-yard program office, the walk of shame did not stop.  Recio alone walked Plaintiff through the program office and into the C-yard holding cell.  It was unnecessary to parade Plaintiff through the hallways of the program office to the C-yard side, and the closest holding cells to Reed's office, on the D-yard side, were vacant.  Recio removed the cuffs, and Plaintiff said "I need my cane."  Recio said "you know what to do, if you don't like it,

5

602 it," and said "you know how to do it, you have 602ed me before."  Shortly after, a correctional officer entered the room with Plaintiff's cane and placed it on the table in the room. Plaintiff looked at his wrists, and they were red, swollen, and had visible lacerations.

Both Recio and Reed entered the room Plaintiff was being held in, and Reed instructed Recio "take him to my office."  Recio told Plaintiff to cuff up.  Plaintiff told Reed, "how am I going to walk with my cane, if my hands are behind my back, stupid?"  Reed instructed Recio to cuff Plaintiff in the front.  Reed left and when Recio applied the cuffs, Recio twisted the cuffs to shorten the distance on the chain.  Plaintiff said, "really and again why are they so tight?"  Recio smiled and said, "you can still use your cane, 602 it."  Recio took Plaintiff and paraded Plaintiff through the hallways of the program office, back to the D-yard side and to Reed's office.

In Reed's office, Plaintiff was told to take a seat.  Reed stated, "I understand you have a problem with a counselor?"  Plaintiff asked what Reed was talking about.  Reed said that Plaintiff has a problem with T. Kafka, the counselor in Plaintiff's substance abuse group.  Plaintiff said he did not even go to her group today, because he got a ducat last night for a different group. Plaintiff said he did not need to be brought to the office, Reed could have just called Plaintiff down and asked Plaintiff what was going on.

Reed told Plaintiff, "are you talking about her?"  Plaintiff replied, "all I have done is filed paperwork on her, 22's and 602's."  Reed said, "okay well then you are talking about her." Plaintiff said, "I have that right."  Reed told Plaintiff, "do you want to have a date," referring to a release date from prison.  Plaintiff told Reed that he already had a date.  Reed asked, "you want me to transfer you?"  Plaintiff said, he knew that this was what it was about, because Plaintiff was suing Correctional Officer Ogletree and Lt. Costa.  Reed replied, "…what for?"  Plaintiff said it was for retaliation.

Reed told Plaintiff, "well if you don't stop 'talking' about T. Kafka, I am going to put you in Ad-Seg for over familiarity and get you transferred out of here."  Plaintiff said, "you know you are making that up, cause all I did was write her up.  And how could I be over familiar, if all I am doing is writing her up?  Otherwise, I would already be in Ad-Seg pending an investigation 'br' Squad."  Reed told Plaintiff "well just quit!"  Reed then told Plaintiff to stand and open the door.

6

1    Reed instructed Recio to uncuff Plaintiff and let Plaintiff go back to the yard with his cane and
2    return to his cell dorm.
3        When Plaintiff returned to his cell dorm, Plaintiff had to apologize to his cell mates and
4    explain why the correctional officers came to their living area.  The cell mates hazed Plaintiff
5    about having to move because they did not want correctional officers coming to their living
6    quarters. They hazed him about 602ing officers and counselors.  Plaintiff had to endure weeks of
7    questioning from inmates and cell mates.  Plaintiff felt humiliated by the walk of shame and the
8    constant questioning.  Shortly after, Plaintiff had to get a walker because the pain from being
9    escorted a substantial distance without the use of the cane caused more pain than usual in his right
10   foot and leg.
11       Plaintiff claims retaliation in violation of the First Amendment.  Recio was aware that
12   Plaintiff filed a grievance against him about standing in the shade on the yard, and referred to
13   Plaintiff knowing how to 602 him because Plaintiff had 602'ed Recio in the past.  Plaintiff alleges
14   that Recio placing the handcuffs tightly on Plaintiff and ignoring his need for his cane was an
15   adverse action because of Plaintiff's past grievances against Recio.  Plaintiff states that because
16   inmates would not want to be put through the pain of overly tight handcuffs, most inmates would
17   have a chilling effect presented upon them to note file a grievance against an officer for not
18   allowing the inmate to stand in the shade.  Recio smiling when Plaintiff requested loosening of
19   the handcuffs and the denial of Plaintiff's cane, along with acknowledgement that Recio was
20   aware of Plaintiff filing a grievance against Recio is evidence of a retaliatory motive.
21       Plaintiff also claims that Defendant Reed's conduct was retaliation for Plaintiff filing a
22   grievance against freestaff T. Kafka because Reed considered the 602 and form 22's a form of
23   "talking about" Kafka.  Reed threatened Plaintiff with false charges of over familiarity with
24   Kafka to place Plaintiff in Ad-Seg and transfer Plaintiff.  Plaintiff states that inmates do not want
25   to have correctional officers pack their property to go to Ad-Seg.  When officers pack an inmate's
26   property, inmates lose property.  Then inmates do not want to move and possibly lose the cell
27   mates they get along with.  Individuals in society do not like to move.  The threat of moving alone
28   would chill a person of ordinary firmness from continuing to file grievances against freestaff T.

Kafka, not including the threat of transfer.  There was no penological interest to tell Plaintiff to stop "talking about" her when that really meant writing paperwork on Kafka.

Plaintiff also claims excessive force in violation of the Eighth Amendment.  The force was excessive in the application of the handcuffs.  The cuffs were overly tight and Plaintiff told Recio at least three times that the handcuffs needed to be loosened before and during the escort.  Recio just smiled.  There was no need to use force against Plaintiff, or for a cuffing three officer escort.  If an escort was warranted, a single officer could have escorted Plaintiff, uncuffed, to a destination.  Typically, when the sergeant wants to talk to an inmate, the inmate is paged to go to the program office.  After the interview with Reed, Plaintiff was not cuffed or escorted.  Plaintiff complied with all orders and verbal commands given to him and was not issued a RVR.  A simple order to report to the program office was all that was needed.  Plaintiff alleges a violation of Valley State Prison Operational Manual for failure of staff to use verbal persuasion in lieu of force.  Defendant Ly and Talley heard Plaintiff ask for the cuffs to be loosened during the escort and failed to take any action to reduce the force being used on Plaintiff.

Plaintiff alleges that the denial of his cane violated the Eighth Amendment.  Plaintiff told Recio on July 2, 2021[1] while standing against the wall near the exit to building 1, that Plaintiff needed his cane.  Recio denied Plaintiff the medically prescribed cane.  During the escort, Plaintiff asked for his cane four more times.  He said he needed his cane to Recio, Talley, Ly and two of the four requests were heard by Reed and inmates.  Plaintiff was limping for about a thousand feet and it was obvious he was in pain.  Talley and Ly had searched Plaintiff's cell and Plaintiff's cane and vest were in unconcealed locations.  Plaintiff's mobility impaired vest was removed from his locker by one of the searching officers.  The officers are liable for not providing Plaintiff with his cane when he requested it.  All Defendants failed to intervene in the other officers' conduct.

Plaintiff alleges a violation of the Americans with Disability Act.  The officers could have used less force or no force during the performance of their penological duties with respect to

---

[1] The first amended complaint states that this exchange occurred on July 2, 2022.  (ECF No. 15 at 20:24.)  This appears to be a clerical error.

8

1   Plaintiff, a disabled person.  The denial of Plaintiff's cane is an ADA violation because it affected

2   his access to activities.  They failed to provide reasonable accommodation after being notified of

3   the need for accommodation.  All defendants were acting in their official capacity and Valley

4   State Prison lacked a policy or proper training for reasonable accommodations for transportation

5   of disabled inmates.

6        Plaintiff asks that the Court take supplemental jurisdiction of his state law claims.

7   Plaintiff alleges a violation of California Constitution, Art. 1 §17 for cruel and unusual

8   punishment.  Reed, Recio, Talley and Ly inflicted cruel and unusual punishment when they did

9   not allow Plaintiff to use his cane to walk without unnecessary pain.  Plaintiff also alleges Assault

10   and Battery from the use of force by Recio, Talley, and Ly by not loosening the overly tight

11   handcuffs.  Plaintiff alleges the tight handcuffs were done intentionally with intent to harm.

12   Plaintiff also alleges violation of the Tom Bane Civil Rights Act.  Defendant Reed's investigation

13   and conversation with Plaintiff was designed to use threat and intimidation to stop or persuade

14   Plaintiff from future use of the grievance process.

15        Plaintiff seeks compensatory and punitive damages.

16   **V.   Discussion**

17        **A.   Eighth Amendment**

18        The Eighth Amendment protects prisoners from inhumane methods of punishment and

19   from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.

20   2006).  The unnecessary and wanton infliction of pain violates the Cruel and Unusual

21   Punishments Clause of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)

22   (citations omitted).  Although prison conditions may be restrictive and harsh, prison officials must

23   provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.

24   *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

25        **1.   Excessive Use of Force**

26        "[W]henever prison officials stand accused of using excessive physical force in violation

27   of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-

28   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson*, 503 U.S. at 6–7.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id.* at 9.  *De minimis* uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind."  *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Relevant factors for this consideration include "the extent of injury . . . [,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' "  *Id.* (quoting *Whitley*, 475 U.S. at 1085).  Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials.  *See Whitley*, 475 U.S. at 321–22.

Liberally construing the allegations, Plaintiff states a cognizable claim against Defendants Recio, Talley, and Ly for tight handcuffs during the escort during which Plaintiff said at least four times that the cuffs were tight.  *See Guerrero v. Rivera*, No. EDCV 13-0092-JGB (JPR), 2013 WL 878285, at *2 (C.D. Cal. Mar. 8, 2013) (finding that plaintiff had failed to state a cognizable excessive force claim regarding overly tight handcuffs where the named defendants had nothing to do with the handcuffing, that Plaintiff did not allege that he made more than one request to any defendant to loosen the cuffs, or that any defendant was present for more than a few moments and was able to observe the effect the handcuffs had on the plaintiff); *Gregory v. Adams*, No. CIV S-05-1393 FCD EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive force in ignoring plaintiff's repeated assertions of pain and refusing to loosen cuffs for more than five hours). See *Salazar v. L.A. Cnty. Sheriff's Dep't*, No. CV 17-07686-ODW (DFM), 2021 WL 3438653, at *2 (C.D. Cal. July 6, 2021) (rejecting without leave to amend excessive-force claim because plaintiff didn't allege facts showing how handcuffs caused him pain or injury or how he communicated that to defendants), accepted by 2021 WL 4338946 (C.D. Cal. Sept. 23, 2021); *Johnson v. Frauenheim*, No. 1:18-cv-01477-AWI-BAM (PC), 2021 WL 5236498, at *8 (E.D. Cal. Nov. 10, 2021) (rejecting without leave to amend excessive-force claim because plaintiff didn't allege that he asked defendant "more than once to loosen" handcuffs or that defendant

1    "otherwise knew that the handcuffs were too tight and were causing [p]laintiff to suffer severe

2    pain"), accepted by 2021 WL 5982293 (E.D. Cal. Dec. 17, 2021); *Bibbs v. Meiser*, No. SACV 22

3    0202 SPG JPR, 2022 WL 2528611, at *3 (C.D. Cal. July 6, 2022) (a constitutional violation

4    could only rest on repeated ignored requests.)

5            In addition, Plaintiff alleges that Defendant Recio put his knuckles in Plaintiff's back and

6    pushed him against horizontal bars.  Generally, such an allegation is a *de minimis* use of force.

7    Plaintiff further alleges that his back had a bulging disc.  However, Plaintiff fails to allege Recio

8    had any knowledge of the disc or that Plaintiff complained of pain.  Plaintiff has not sufficiently

9    pled facts showing that Defendant Recio applied force to Plaintiff maliciously and sadistically to

10   cause harm.  Plaintiff has been unable to cure this deficiency. Therefore, Plaintiff has not alleged

11   a cognizable claim for excessive force for Defendant Recio putting his knuckles in Plaintiff's

12   back and pushing him.

13                   **2.      Conditions of Confinement**

14           Plaintiff alleges he was humiliated when Defendants "paraded" Plaintiff in handcuffs and

15   limping in front of other inmates.

16           Allegations of harassment and intent to humiliate a prisoner do not usually state a

17   cognizable claim in conditions of confinement cases. "Because routine discomfort is part of the

18   penalty that criminal offenders pay for their offenses against society, only those deprivations

19   denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis

20   of an Eighth Amendment violation." *McMillian*, 503 U.S. at 9, 112 S. Ct. 995 (citations and

21   internal quotation marks omitted).  Thus, "courts considering a prisoner's claim must ask: 1) if

22   the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was

23   objectively harmful enough to establish a constitutional violation."  *Somers v. Thurman*, 109 F.3d

24   614, 622 (9th Cir. 1997), cert. denied 522 U.S. 852 (citing, inter alia, *McMillian*, 503 U.S. at 8,

25   112 S. Ct. 995).

26           Plaintiff's allegations simply do not rise to the level of extremely egregious conduct

27   intended to cause severe psychological pain required to state an Eighth Amendment claim.  *See,*

28   *e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) (finding defendant's conduct "not

objectively harmful enough" and prisoner's humiliation not severe enough to state an Eighth Amendment claim).  Plaintiff alleges that the "walk of shame" put him at risk of harm from other inmates because it exposes him as weak, in fear, and being a "roll up case on the yard."  Plaintiff has not sufficiently pled that he has been incarcerated under conditions posing a substantial risk of serious harm because his allegations are merely speculative fears of harm.  *See Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm"); *Tirado v. Santiago*, No. 1:22-CV-724-BAM (PC), 2022 WL 3230573, at *1 (E.D. Cal. Aug. 10, 2022) (failure to state a claim as speculative fear of harm where an officer made the following comment to plaintiff, "I'm not the one who locked it up because of safety concerns.")

### 3.      Medical Need

The two-part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A serious medical need is shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Id.*  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further injury or the "unnecessary and wanton infliction of pain."  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Plaintiff had a serious medical need because he needed a cane to walk without unnecessary pain.

In addition, the defendant's response to that serious medical need must be deliberately indifferent. "Under th[e deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Toguchi*, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps

to abate it. See *Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Liberally construing the allegations, Plaintiff states a cognizable claim against Defendants Reed, Recio, Ly, and Talley for denial of Plaintiff's cane during the escort.  Plaintiff alleges that he stated multiple times during the escort that he was ADA and needed his cane to walk, including twice when Defendant Reed was within five feet of Plaintiff and the escort officers. (ECF No. 15 at 11:13–17.)  Plaintiff also alleges that all defendants had prior knowledge of Plaintiff's need to use a cane because of prior interactions with Plaintiff.  (ECF No. 15 at 8:20–23 (named Defendants had all seen Plaintiffs using his cane and mobility impaired vest twice a day when going to chow); 8:23–24 (Recio had asked Plaintiff to put on his vest when he was holding it and not wearing it); 10:11–16 (the week prior, Talley had thirty-minute discussion requiring Plaintiff to use his cane while standing); 10:16–21 (Talley was officer assigned to Plaintiff's cognitive behavior group and would acknowledge Plaintiff standing outside the trailer with his cane and wearing his mobility impaired vest); 11:21–28 (Reed knew Plaintiff had medical reasonable accommodations); 11:28–12:3 (Reed heard Plaintiff's request for his cane during the escort).)

## B.    First Amendment – Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

1    Adverse action taken against a prisoner "need not be an independent constitutional

2 violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114

3 (internal citations omitted). A causal connection between the adverse action and the protected

4 conduct can be alleged by an allegation of a chronology of events from which retaliation can be

5 inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison

6 officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. The plaintiff must allege

7 either a chilling effect on future First Amendment activities, or that he suffered some other harm

8 that is "more than minimal." *Watison*, 668 F.3d at 1114. A plaintiff successfully pleads that the

9 action did not reasonably advance a legitimate correctional goal by alleging, in addition to a

10 retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were

11 "unnecessary to the maintenance of order in the institution." *Id.*

12    Plaintiff fails to set forth any factual allegations to support a claim of retaliation against

13 Defendant Reed for allegedly threatening to send Plaintiff to Ad-Seg or transfer him. While

14 Plaintiff alleges that inmates generally do not want correctional officers to pack their property or

15 to move from their cells and that would chill "a person of ordinary firmness," from continuing to

16 file grievances, (*id.* at 16:26–17:5), at no point does Plaintiff alleges that he actually suffered a

17 chilling effect due to Defendant Reed's threats.

18    Liberally construing Plaintiff's allegations, the Court finds that Plaintiff states a

19 cognizable claim for retaliation against Defendant Recio for using overly tight hand cuffs and

20 refusing to let Plaintiff use his cane. Although Plaintiff alleges only that these actions would

21 cause "most inmates" to have a chilling effect on their First Amendment rights, (ECF No. 15 at

22 16:5–9), and does not allege that he personally suffered such a chilling effect, the Court finds that

23 Plaintiff sufficiently alleges that the retaliatory conduct caused Plaintiff to suffer "some other

24 harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Rhodes*, 408 F.3d at 568 n.11.

25 That the retaliatory conduct itself did not chill Plaintiff from exercising his First Amendment

26 rights against the alleged retaliator does not defeat the retaliation claim at the pleading stage. *See*

27 *Rhodes* at 408 F.3d at 569.

28 ///

14

## C.      Eleventh Amendment Immunity

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies."  *See Fireman's Fund Ins. Co. v. City of Lodi, Cal*., 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003).  "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs*., 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity). Therefore, Plaintiff cannot pursue claims for damages against CDCR or Valley State Prison in this action.

## D.      Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  *Id.* § 12131(2).

While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and

obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

To the extent Plaintiff intends to sue the individual named defendants for violation of his rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  The proper defendant in ADA actions is the public entity responsible for the alleged discrimination.  *U.S. v. Georgia*, 546 U.S. 151, 153 (2006).  State correctional facilities are "public entities" within the meaning of the ADA.  *See* 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

In order to state a claim under the ADA, the plaintiff must have been "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong*, 124 F.3d at 1023.  Plaintiff has alleged no facts demonstrating such exclusion or denial.  Plaintiff alleges that being denied his cane excluded his ability to have access to activities and failed to reasonably accommodate Plaintiff.  While Plaintiff alleges that he uses a cane and mobility vest, he does not allege that denial of his cane led to an exclusion or denial of a prison service, program, or activity.  Plaintiff was being escorted to the program office and not being denied access to activities.

### E.     Verbal Harassment

Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which prohibits cruel and unusual punishment.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); *see also Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action).  Even in cases concerning "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' " *Freeman*

1    *v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) (quoting *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139

2    (9th Cir. 1987)) (alterations omitted), abrogated on other grounds by *Shakur v. Schriro*, 514 F.

3    878 (9th Cir. 2008).  However, verbal harassment may violate the constitution when it is

4    "unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff]

5    psychological damage."  *Cox v. Kernan*, 2019 WL 6840136, at *5 (E.D. Cal. Dec. 16, 2019)

6    (alterations in original) (quoting Keenan, 83 F.3d 1083 at 1092).  In affirming in an unpublished

7    opinion, the Ninth Circuit quoted *Freeman*: "As for being subjected to abusive language directed

8    at [one's] religious and ethnic background, verbal harassment or abuse . . . is not sufficient to state

9    a constitutional deprivation under 42 U.S.C. § 1983."  *Zavala v. Bartnik*, 348 F. App'x 211, 213

10   (9th Cir. 2009) (quoting *Freeman*, 125 F.3d at 738).  Plaintiff cannot state a claim for any

11   harassment he alleges.

12           **F.      Prison Regulations**

13           To the extent that Plaintiff attempts to bring any claims solely based on a defendant's

14   violation of prison rules and policies, he may not do so, as alleged violations of prison rules and

15   policies do not give rise to a cause of action under § 1983.  Section 1983 provides a cause of

16   action for the deprivation of federally protected rights.  "To the extent that the violation of a state

17   law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by

18   the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada Cty., Idaho*, 119 F.3d

19   1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist*., 90 F.3d 367, 370 (9th

20   Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12

21   n.4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy.

22   *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d

23   427, 430 (8th Cir. 1997)).  Specifically, Plaintiff cannot state a claim for the type of escort, a three

24   officer escort, because Plaintiff does not have a constitutional right to any particular kind of

25   escort.  Thus, the violation of any prison regulation, rule or policy does not amount to a

26   cognizable claim under federal law, nor does it amount to any independent cause of action under

27   section 1983.

28   ///

### G.     State Law Claims

The Court notes that Plaintiff has not sufficiently alleged compliance with the Government Claim Act.  "California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the California Victim Compensation and Government Claims Board . . . no more than six months after the cause of action accrues." *Lopez v. Cate*, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2).  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action." *Id.* (internal quotation marks and citations omitted).  The "obligation to comply with the Government Claims Act" is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").  *McPherson v. Alamo*, No. 3:15-cv-03145-EMC, 2016 WL 7157634, at *6 (N.D. Cal. 2016) (citing *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (2013)).  Plaintiff appears to raise claims under California state law.  While Plaintiff alleges that he "Filed California Department of General Service" when explaining his exhaustion of administrative remedies, (ECF No. 15 at 2), Plaintiff does not allege that he presented a claim to the California Government Claims Program (the successor to the Victim Compensation and Government Claims Board).  Nor does Plaintiff allege whether such a claim was presented within six months of the incidents underlying this action.  Plaintiff will be granted leave to amend these allegations, to the extent he is able to do so in good faith.

### VI.    Conclusion and Order

For the reasons stated, the Court finds that Plaintiff states cognizable claims against: (1) Defendants Recio, Talley, and Ly for tight handcuffs during the escort on July 2, 2021, in violation of the Eighth Amendment; (2) Reed, Recio, Talley, and Ly for denial of Plaintiff's cane during the escort, in violation of the Eighth Amendment; and (3) Defendant Recio for retaliation in violation of the First Amendment.  Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants.  Plaintiff will be granted leave to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith.  *Lopez*

18

1  *v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2        If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding

3  only on the cognizable claims identified by the Court, he may file a notice informing the Court

4  that he does not intend to amend, and he is willing to proceed only on his cognizable claims.  The

5  Court will then recommend that the remaining claims be dismissed from this action, and then

6  initiate the process for service of the complaint.

7        If Plaintiff wishes to file an amended complaint, any such amended complaint should be

8  brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the

9  deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678–79.  Although accepted as

10  true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative

11  level . . . ."  *Twombly*, 550 U.S. at 555 (citations omitted).  Plaintiff's amended complaint may not

12  exceed **twenty-five (25) pages**, exclusive of exhibits.

13        Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

14  claims in his first amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no

15  "buckshot" complaints).

16        Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.

17  *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended

18  complaint must be "complete in itself without reference to the prior or superseded pleading."

19  Local Rule 220.

20        Based on the foregoing, it is HEREBY ORDERED that:

21    1.  The Clerk's Office shall send Plaintiff a complaint form;

22    2.  Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

23        a.  File a second amended complaint, **<u>not to exceed twenty-five (25) pages in length</u>**,

24           curing the deficiencies identified by the Court in this order (or file a notice of

25           voluntary dismissal); or

26        b.  Notify the Court in writing that he does not wish to file a second amended

27           complaint and he is willing to proceed only on his claim against: (1) Defendants

28           Recio, Talley, and Ly for tight handcuffs during the escort on July 2, 2021, in

violation of the Eighth Amendment; (2) Reed, Recio, Talley, and Ly for denial of

Plaintiff's cane during the escort, in violation of the Eighth Amendment; and

(3) Defendant Recio for retaliation in violation of the First Amendment; and

3. **If Plaintiff fails to comply with this order, the Court will recommend dismissal of this action, without prejudice, for failure to obey a court order and for failure to prosecute.**

IT IS SO ORDERED.

Dated:   **November 18, 2022**         /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE