1

2

3

4

5

6

7

8                                   **UNITED STATES DISTRICT COURT**

9                                    EASTERN DISTRICT OF CALIFORNIA

10

11    KORY T. O'BRIEN,                                    Case No.  1:22-cv-00780-AWI-BAM (PC)

12                          Plaintiff,                    FINDINGS AND RECOMMENDATIONS
                                                          REGARDING DISMISSAL OF CERTAIN
13          v.                                            CLAIMS

14    REED, *et al.*,                                     (ECF No. 20)

15                          Defendants.                   **FOURTEEN (14) DAY DEADLINE**

16

17          Plaintiff Kory T. O'Brien ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

18    *pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's second amended

19    complaint, filed December 16, 2022, is therefore currently before the Court for screening.  (ECF

20    No. 20.)

21    **I.      Screening Requirement and Standard**

22          The Court is required to screen complaints brought by prisoners seeking relief against a

23    governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

24    § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

25    or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

26    relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

27          A complaint must contain "a short and plain statement of the claim showing that the

28    pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

                                                       1

required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.    Plaintiff's Allegations

Plaintiff is currently housed at California Medical Facility in Vacaville, California.  The events in the complaint are alleged to have occurred at Valley State Prison, in Chowchilla, California.  Plaintiff names the following defendants: (1) D. Reed, Sergeant; (2) J. Recio, retired correctional officer; (3) T. Ly, correctional officer; and (4) Talley, correctional officer.

Plaintiff alleges as follows.

On July 2, 2021, Plaintiff was awakened from an afternoon nap when he heard keys in his cell door and his name being called.  Plaintiff got up and limped to the cell door, with his head and eyes still foggy.  Defendant Recio instructed Plaintiff to turn around and cuff up.  Plaintiff was not disruptive or hostile towards Recio's order and complied.  Recio applied the hand cuffs to Plaintiff's wrists behind Plaintiff's back.  Recio jerked Plaintiff backwards and instructed Plaintiff to turn to his left.  Plaintiff said, "I need my cane."

Recio ignored Plaintiff's request and asked "where is your ID?"  Plaintiff said, "I am not sure, I just woke up."  Recio did not verify that Plaintiff was who he was before being cuffed.  Plaintiff and Recio had had past encounters and disagreements.  They were on a prison yard at the same time in the past.  Recio wrote a rules violation report for Plaintiff standing in the shade, when Recio knows that Plaintiff has a medical condition that limits the direct exposure that

2

Plaintiff has to the sun.  Plaintiff filed a 602 against Recio.  After that, Recio and Plaintiff were transferred to another yard together and continued to have verbal confrontations.

On July 2, 2021, Recio told Plaintiff to "walk" and ignored Plaintiff's second request for his cane.  Plaintiff slowly limped forward.  Plaintiff has a bulging disc in his lower back that presses on the right nerve in his back causing pain in his right foot and leg and "drop foot." Plaintiff uses the cane to ease walking, and has a mobility impaired vest as well.  Plaintiff uses the cane and wears the vest when he leaves the cell to go to chow twice a day.  Staff at the institution, including Defendants, have seen Plaintiff use his vest.  Recio has in the past asked Plaintiff to put on his vest when Plaintiff is not wearing it.  Plaintiff also had medical restrictions requiring him to be housed in a lower bunk, lower tier, and a cell dorm with handrails in the shower and bathroom area at the time.

Plaintiff complied with Recio's order to "walk," and Defendant Reed stopped the escort and asked Recio "where is his ID?"  Plaintiff replied to Reed, "I don't know, I just woke up." Reed instructed Recio to put Plaintiff over next to the entrance/exit door of building 1.  Recio pushed Plaintiff's lower back and said "walk!"  Plaintiff limped towards the wall.  When Plaintiff reached the wall, Recio pushed Plaintiff against the bars that run horizontal in front of the windows.  Plaintiff stood in front of the bars, continuously lifting his right foot, in obvious pain. Plaintiff told Recio "I need my cane and can you loosen these cuffs?"  Recio looked at Plaintiff with a smile and said nothing.

While Plaintiff was standing against the wall, other correctional officers entered Plaintiff's cell, purportedly to look for Plaintiff's ID.  Plaintiff's cane and mobility vest were in plain sight.

Reed then told Recio to escort Plaintiff to Reed's office, located in the D program office, more than 1,000 feet away from building 1 where Plaintiff was to be escorted from.  Reed got in a golf cart and drove off.

As Plaintiff was being escorted out of building 1, Plaintiff said loudly, "I am ADA, I need my cane, and loosen the cuffs."  Plaintiff was being escorted, on the left by Defendant T. Ly, and on the right by Defendant Talley.  Recio was walking behind them.  Recio instructed Plaintiff to "walk" and pushed Plaintiff forward with his knuckles in Plaintiff's back.  Plaintiff repeated "I

am ADA, I need my cane, and loosen the cuffs."  Talley told Plaintiff "just shut up," and Plaintiff slowly limped forward in pain.

The week prior, Plaintiff and Talley had a discussion about a Request for Interview, CDCR 22, that Plaintiff had sent to Correctional Officer Buitron in regard to freestaff T. Kafka's conduct.  During that discussion, Plaintiff used his cane and wore a mobility vest for the thirty-minute conversation.  Talley had seen Plaintiff numerous times with Plaintiff's mobility vest on and using a cane.

As Plaintiff limped towards the D program office, the escorting Defendants would not loosen Plaintiff's cuffs or retrieve Plaintiff's cane.  Plaintiff noticed that his peers in the cognitive behavior group were not being let in the trailers and were gathered in front of building 4.  When Plaintiff got closer to his peers, Plaintiff twice said out loud, "I am ADA, and they won't let me have my cane."  Reed was sitting in the golf cart parked in front of building 4. Reed looked at Plaintiff, got wide-eyed and dropped his lower jaw.  Reed then drove off to park in front of the D-yard program office.  Recio pushed his knuckles into Plaintiff's lower back and told him to "walk," and Ly and Talley were both on either sides of Plaintiff.

Plaintiff alleges that Defendant Reed knew Plaintiff needed reasonable accommodation because Reed had seen and talked to Plaintiff while Plaintiff had his mobility vest on and using his cane.  Reed had observed Plaintiff going to breakfast with his cane and mobility impaired vest, interviewed Plaintiff numerous times for reasonable medical accommodations, and Reed was the Sergeant that moved Plaintiff into the cell dorm because Plaintiff needed handrails in the shower and bathroom area.  Reed admitted to Plaintiff that he heard Plaintiff say he was ADA and needed his cane, and Reed asked Plaintiff, "what was I suppose to do, stop the escort and get your cane."  Plaintiff told Reed, "yes."

Once Plaintiff got to the D-yard program office, Recio walked Plaintiff through the program office and into the C-yard holding cell. After being placed in a holding cell, Recio removed the cuffs, and Plaintiff said "I need my cane."  Recio said "you know what to do, if you don't like it, 602 it," and said "you know how to do it, you have 602ed me before."  Shortly after, a correctional officer entered the room with Plaintiff's cane and placed it on the table in the room.

Plaintiff looked at his wrists, and they were red, swollen, and had visible lacerations.

Both Recio and Reed entered the room Plaintiff was being held in, and Reed instructed Recio "take him to my office." Recio told Plaintiff to cuff up. Plaintiff told Reed, "how am I going to walk with my cane, if my hands are behind my back, stupid?" Reed rolled his eyes and instructed Recio to cuff Plaintiff in the front. Reed left. When Recio applied the cuffs, Recio twisted the cuffs to shorten the distance on the chain. Plaintiff said, "really and again why are they so tight?" Recio smiled and said, "you can still use your cane, 602 it." Recio took Plaintiff, back to the D-yard side and to Reed's office.

In Reed's office, Plaintiff was told to take a seat. Reed stated, "I understand you have a problem with a counselor?" Plaintiff asked what Reed was talking about. Reed said that Plaintiff has a problem with T. Kafka, the counselor in Plaintiff's substance abuse group. Plaintiff said he did not even go to her group today, because he got a ducat last night for a different group. Plaintiff said he did not need to have three officers handcuff him and escort him to the office just to have a conversation. Reed could have just called Plaintiff down and asked Plaintiff what was going on.

Reed tasked Plaintiff, "are you talking about her?" (T. Kafka). Plaintiff replied, "all I have done is filed paperwork on her, 22's and 602's." Reed said, "okay well then you are talking about her." Plaintiff said, "I have the right to file paperwork." Reed told Plaintiff, "do you want to have a date," referring to a release date from prison. Plaintiff told Reed that he already had a date. Reed asked, "you want me to transfer you?" Plaintiff said, he thought that this was what it was about, because Plaintiff was suing Correctional Officer Ogletree and Lt. Costa. Reed replied, "…what for?" Plaintiff said it was for retaliation.

Reed told Plaintiff, "well if you don't stop 'talking' about T. Kafka, I am going to put you in Ad-Seg for over familiarity and get you transferred out of here." Plaintiff said, "you know you are making that up, cause all I did was write her up. And how could I be over familiar, if all I am doing is writing her up? Otherwise, I would already be in Ad-Seg pending an investigation by Squad." Reed told Plaintiff "well just quit!" Reed then told Plaintiff to stand and open the door. Reed instructed Recio to uncuff Plaintiff and let Plaintiff go back to the yard with his cane.

Shortly after, Plaintiff had to get a walker because the pain from having to walk a substantial distance without his case which caused more pain than usual in his right foot and leg.

Plaintiff claims retaliation in violation of the First Amendment. Recio was aware that Plaintiff filed a grievance against him about standing in the shade on the yard, and referred to Plaintiff knowing how to 602 him because Plaintiff had 602'ed Recio in the past. Plaintiff alleges that Recio placing the handcuffs tightly on Plaintiff and ignoring his need for his cane was an adverse action because of Plaintiff's past grievances against Recio. Plaintiff states that because inmates would not want to be put through the pain of overly tight handcuffs, most inmates would have a chilling effect presented upon them to note file a grievance against an officer for not allowing the inmate to stand in the shade. Recio smiling when Plaintiff requested loosening of the handcuffs and the denial of Plaintiff's cane, along with acknowledgement that Recio was aware of Plaintiff filing a grievance against Recio is evidence of a retaliatory motive.

Plaintiff also claims that Defendant Reed's conduct was retaliation for Plaintiff filing a grievance against freestaff T. Kafka because Reed considered the 602 and form 22's a form of "talking about" Kafka. Reed threatened Plaintiff with false charges of over familiarity with Kafka to place Plaintiff in Ad-Seg and transfer Plaintiff. Plaintiff states that inmates do not want to have correctional officers pack their property to go to Ad-Seg. When officers pack an inmate's property, inmates lose property. There was no penological interest to tell Plaintiff to stop "talking about" her when that really meant writing paperwork on Kafka.

Plaintiff also claims excessive force in violation of the Eighth Amendment. The force was excessive in the application of the handcuffs. The cuffs were overly tight and Plaintiff told Recio at least three times that the handcuffs needed to be loosened before and during the escort. Recio just smiled. There was no need to use force against Plaintiff, or for a cuffing three officer escort. If an escort was warranted, a single officer could have escorted Plaintiff, uncuffed, to a destination. Typically, when the sergeant wants to talk to an inmate, the inmate is paged to go to the program office. Plaintiff complied with all orders and verbal commands given to him and was not issued an RVR. Defendant Ly and Talley heard Plaintiff ask for the cuffs to be loosened during the escort and failed to take any action to reduce the force being used on Plaintiff.

Plaintiff alleges that the denial of his cane violated the Eighth Amendment.  Plaintiff told Recio on July 2, 2021 while standing against the wall near the exit to building 1, that Plaintiff needed his cane.  Recio denied Plaintiff the medically prescribed cane.  During the escort, Plaintiff asked for his cane four more times.  He said he needed his cane to Recio, Talley, Ly and two of the four requests were heard by Reed and inmates.  Plaintiff was limping for about a thousand feet and it was obvious he was in pain.  Talley and Ly had searched Plaintiff's cell and Plaintiff's cane and vest were in unconcealed locations.  Plaintiff's mobility impaired vest was removed from his locker by one of the searching officers.  The officers are liable for not providing Plaintiff with his cane when he requested it.  All Defendants failed to intervene in the other officers' conduct.

Plaintiff asks that the Court take supplemental jurisdiction of his state law claims. Plaintiff alleges a violation of California Constitution, Art. 1 §17 for cruel and unusual punishment.  Reed, Recio, Talley and Ly inflicted cruel and unusual punishment when they did not allow Plaintiff to use his cane to walk without unnecessary pain.  Plaintiff also alleges Assault and Battery from the use of force by Recio, Talley, and Ly by not loosening the overly tight handcuffs.  Plaintiff alleges the tight handcuffs were done intentionally with intent to harm. Plaintiff also alleges violation of the Tom Bane Civil Rights Act.  Defendant Reed's investigation and conversation with Plaintiff was designed to use threat and intimidation to stop or persuade Plaintiff from future use of the grievance process.

Plaintiff seeks damages.

## III.   Discussion

### A.     Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.

1   *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

2   **1.       Excessive Use of Force**

3   "[W]henever prison officials stand accused of using excessive physical force in violation

4   of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-

5   faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

6   *Hudson*, 503 U.S. at 6–7.  Not "every malevolent touch by a prison guard gives rise to a federal

7   cause of action." *Id.* at 9.  *De minimis* uses of physical force do not violate the constitution

8   provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley*

9   *v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

10   Relevant factors for this consideration include "the extent of injury . . . [,] the need for

11   application of force, the relationship between that need and the amount of force used, the threat

12   'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity

13   of a forceful response.' " *Id.* (quoting *Whitley*, 475 U.S. at 1085).  Finally, because the use of

14   force relates to the prison's legitimate penological interest in maintaining security and order, the

15   court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.

16   Liberally construing the allegations, Plaintiff states a cognizable claim against Defendants

17   Recio, Talley, and Ly for tight handcuffs during the escort during which Plaintiff said at least four

18   times that the cuffs were tight.  *See Guerrero v. Rivera*, No. EDCV 13-0092-JGB (JPR), 2013

19   WL 878285, at *2 (C.D. Cal. Mar. 8, 2013) (finding that plaintiff had failed to state a cognizable

20   excessive force claim regarding overly tight handcuffs where the named defendants had nothing

21   to do with the handcuffing, that Plaintiff did not allege that he made more than one request to any

22   defendant to loosen the cuffs, or that any defendant was present for more than a few moments and

23   was able to observe the effect the handcuffs had on the plaintiff); *Gregory v. Adams*, No. CIV S-

24   05-1393 FCD EFB P, 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (holding that triable issue

25   existed as to whether officer who did not personally handcuff plaintiff nonetheless used excessive

26   force in ignoring plaintiff's repeated assertions of pain and refusing to loosen cuffs for more than

27   five hours). See *Salazar v. L.A. Cnty. Sheriff's Dep't*, No. CV 17-07686-ODW (DFM), 2021 WL

28   3438653, at *2 (C.D. Cal. July 6, 2021) (rejecting without leave to amend excessive-force claim

because plaintiff didn't allege facts showing how handcuffs caused him pain or injury or how he communicated that to defendants), accepted by 2021 WL 4338946 (C.D. Cal. Sept. 23, 2021); *Johnson v. Frauenheim*, No. 1:18-cv-01477-AWI-BAM (PC), 2021 WL 5236498, at *8 (E.D. Cal. Nov. 10, 2021) (rejecting without leave to amend excessive-force claim because plaintiff didn't allege that he asked defendant "more than once to loosen" handcuffs or that defendant "otherwise knew that the handcuffs were too tight and were causing [p]laintiff to suffer severe pain"), accepted by 2021 WL 5982293 (E.D. Cal. Dec. 17, 2021); *Bibbs v. Meiser*, No. SACV 22 0202 SPG JPR, 2022 WL 2528611, at *3 (C.D. Cal. July 6, 2022) (a constitutional violation could only rest on repeated ignored requests.)

In addition, Plaintiff alleges that Defendant Recio put his knuckles in Plaintiff's back and pushed him against horizontal bars.  Generally, such an allegation is a *de minimis* use of force. Plaintiff further alleges that his back had a bulging disc.  However, Plaintiff fails to allege Recio had any knowledge of the disc or that Plaintiff complained of pain.  Plaintiff has not sufficiently pled facts showing that Defendant Recio applied force to Plaintiff maliciously and sadistically to cause harm.  Plaintiff has been unable to cure this deficiency. Therefore, Plaintiff has not alleged a cognizable claim for excessive force for Defendant Recio putting his knuckles in Plaintiff's back and pushing him.

## 2.   Medical Need

The two-part test for deliberate indifference requires the plaintiff to show (1) " 'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A serious medical need is shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.*  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Plaintiff had a serious medical need because he needed a

cane to walk without unnecessary pain.

In addition, the defendant's response to that serious medical need must be deliberately indifferent. "Under th[e deliberate indifference] standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Toguchi*, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See *Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Liberally construing the allegations, Plaintiff states a cognizable claim against Defendants Reed, Recio, Ly, and Talley for denial of Plaintiff's cane during the escort. Plaintiff alleges that he stated multiple times during the escort that he was ADA and needed his cane to walk, including twice when Defendant Reed was within five feet of Plaintiff and the escort officers. Plaintiff also alleges that all defendants had prior knowledge of Plaintiff's need to use a cane because of prior interactions with Plaintiff. (ECF No. 20, p.6 (named Defendants had all seen Plaintiffs using his cane and mobility impaired vest twice a day when going to chow); *Id.* (Recio had asked Plaintiff to put on his vest when he was holding it and not wearing it); p.7 (the week prior, Talley had thirty-minute discussion requiring Plaintiff to use his cane while standing); p.8 (Reed knew Plaintiff had medical reasonable accommodations); *Id.* (Reed heard Plaintiff's request for his cane during the escort).)

### B.    First Amendment – Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a

state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Adverse action taken against a prisoner "need not be an independent constitutional violation.  The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted).  A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred.  *Id.*  The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities.  *Rhodes*, 408 F.3d at 567–68.  The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114.  A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

Plaintiff fails to set forth any factual allegations to support a claim of retaliation against Defendant Reed for allegedly threatening to send Plaintiff to Ad-Seg or transfer him.  While Plaintiff alleges that inmates generally do not want correctional officers to pack their property or to move from their cells and that would chill "a person of ordinary firmness," from continuing to file grievances, (ECF No 20 at 10-11), at no point does Plaintiff alleges that he actually suffered a chilling effect due to Defendant Reed's threats.

Liberally construing Plaintiff's allegations, the Court finds that Plaintiff states a cognizable claim for retaliation against Defendant Recio for using overly tight hand cuffs and refusing to let Plaintiff use his cane.  Although Plaintiff alleges only that these actions would cause "most inmates" to have a chilling effect on their First Amendment rights, (ECF No. 20 at 10), and does not allege that he personally suffered such a chilling effect, the Court finds that Plaintiff sufficiently alleges that the retaliatory conduct caused Plaintiff to suffer "some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Rhodes*, 408 F.3d at 568 n.11.

That the retaliatory conduct itself did not chill Plaintiff from exercising his First Amendment rights against the alleged retaliator does not defeat the retaliation claim at the pleading stage.  *See Rhodes* at 408 F.3d at 569.

### C.    Prison Regulations

To the extent that Plaintiff attempts to bring any claims solely based on a defendant's violation of prison rules and policies, he may not do so, as alleged violations of prison rules and policies do not give rise to a cause of action under § 1983.  Section 1983 provides a cause of action for the deprivation of federally protected rights.  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada Cty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist*., 90 F.3d 367, 370 (9th Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n.4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).  Specifically, Plaintiff cannot state a claim for the type of escort, a three officer escort, because Plaintiff does not have a constitutional right to any particular kind of escort.  Thus, the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under section 1983.

### D.    State Law Claims

Plaintiff alleges compliance with the Government Claim Act.  "California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the California Victim Compensation and Government Claims Board . . . no more than six months after the cause of action accrues." *Lopez v. Cate*, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2).  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action." *Id.* (internal quotation marks and citations omitted).  The

"obligation to comply with the Government Claims Act" is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). *McPherson v. Alamo*, No. 3:15-cv-03145-EMC, 2016 WL 7157634, at *6 (N.D. Cal. 2016) (citing *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (2013)).

Plaintiff alleges that he presented a claim under California Government Claims Act with the Victim Compensation and Government Claims Board.  Plaintiff alleges that claim was presented within six months of the incidents underlying this action. For pleading purposes, Plaintiff alleges satisfaction with Government Claim Act.

Plaintiff alleges the followings state law claims. Plaintiff alleges state law claims for violation of California Constitution, Art.1 §17 for cruel and unusual punished against Reed, Recio, Talley and Ly for not allowing Plaintiff to use his cane to walk, resulting in unnecessary pain.  Plaintiff alleges Assault and Battery for the use of force by Recio, Talley, and Ly for not loosening the overly tight handcuffs. Plaintiff also alleges violation of the Tom Bane Act for Defendant Reed's investigation and conversation with Plaintiff where Reed threatened and used intimidation to stop or persuade Plaintiff from future use of grievances.

<u>Plaintiff's Claim Under Article I, Section 17 of the California Constitution</u>

The California Court of Appeals has held that "there is no basis to recognize a claim for damages" under this constitutional provision. *Giraldo v. Cal. Dep't of Corr. & Rehab.,* 168 Cal. App. 4th 231, 256 (2008). Federal courts have repeatedly concurred with this conclusion. See e.g., A*sberry v. Relevante*, 2018 WL 4191863, at *7 (E.D. Cal. Aug. 31, 2018) (analyzing *Giraldo* in detail and concluding that "Article I, Section 17 provides no private right of action for damages"), adopted, 2018 WL 4616383 (Sept. 24, 2018); *Hicks v. Hamkar*, 2016 WL 5847011, at *8 (E.D. Cal. Oct. 6, 2016) ("[U]nder Article I, § 17 of the California Constitution, which prohibits cruel or unusual punishment,... no private cause of action for damages exists."); *Schmitz v. Asman*, No. 2:20-CV-00195 JAM CKD PS, 2020 WL 3470475, at *7 (E.D. Cal. June 25, 2020); *McDaniel v. Diaz*, No. 1:20-CV-00856 NONE SAB, 2021 WL 147125, at *20 (E.D. Cal. Jan. 15, 2021), report and recommendation adopted, No. 1:20-CV-00856 NONE SAB, 2021 WL 806346 (E.D. Cal. Mar. 3, 2021) (dismissing plaintiff's section 17 claim). Plaintiff is precluded

from bringing a claim under section 17 of the California Constitution for money damages.

Assault and Battery

Under California civil law, the elements of assault are: "(1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." *Brooks v. United States*, 29 F.Supp.2d 613, 617 (N.D.Cal.1998) (citing Restatement (Second) of Torts § 21). Under California civil law, the elements of a battery are: "(1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." *Tekle v United States*, 511 F.3d 839, 855 (9th Cir. 2007); *accord Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (Cal. Ct. App. 2004).

Based on the above facts, Plaintiff states cognizable claims for assault and battery against Defendants Recio, Talley, and Ly for tight handcuffs during the escort on July 2, 2021.

California Civil Code section 52.1

California Civil Code section 52.1 ("Bane Act") which prohibits a person from interfering or attempting to interfere "by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civil Code § 52.1(a). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007) (citing *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998)).

Liberally construing the allegations, Plaintiff states a cognizable claim against Defendant Reed where Reed threatened and used intimidation to stop or persuade Plaintiff from future use of grievances.

**IV.   Conclusion and Order**

For the reasons stated, the Court finds that Plaintiff states cognizable claims against:

14

(1) Defendants Recio, Talley, and Ly for tight handcuffs during the escort on July 2, 2021, in violation of the Eighth Amendment; (2) Reed, Recio, Talley, and Ly for denial of Plaintiff's cane during the escort, in violation of the Eighth Amendment; (3) Defendant Recio for retaliation in violation of the First Amendment; (4) Defendants Recio, Talley, and Ly for assault and battery for tight handcuffs during the escort on July 2, 2021; and (5) Defendant Reed where Reed threatened and used intimidation to stop or persuade Plaintiff from future use of grievances in violation of California Civil Code section 52.1.  Plaintiff's second amended complaint fails to state any other cognizable claims for relief against any other defendants.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed on December 16, 2022 (Doc. 20), against: (1) Defendants Recio, Talley, and Ly for tight handcuffs during the escort on July 2, 2021, in violation of the Eighth Amendment; (2) Reed, Recio, Talley, and Ly for denial of Plaintiff's cane during the escort, in violation of the Eighth Amendment; (3) Defendant Recio for retaliation in violation of the First Amendment; (4) Defendants Recio, Talley, and Ly for assault and battery for tight handcuffs during the escort on July 2, 2021; and (5) Defendant Reed where Reed threatened and used intimidation to stop or persuade Plaintiff from future use of grievances in violation of California Civil Code section 52.1.

2. All other claims be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

* * *

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

15

and Recommendations."  Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 29, 2022**             /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE